## WEBBER *v.* CHAPMAN.

If a highway be inclosed by an individual, and occupied by him adversely, uninterruptedly, and under a claim of right for more than twenty years, he will acquire a prescriptive right to the land, as against the public, and all persons claiming or justifying under any public right or easement in such highway.

TRESPASS *quare clausum*, and for taking down and carrying away a gate and bars, whereby the plaintiff's sheep escaped from his pasture, &c. Plea, the general issue, and also that the *locus in quo* was a public highway, and that the gate and bars mentioned were obstructions therein, which the defendant removed carefully, &c.

On trial before the court on these issues, it appeared that the *locus in quo* was originally a kind of rangeway, fenced out and occupied as a public highway in Hopkinton, as early as 1785, having upon it the house now occupied by the defendant and one other; that in 1820 the selectmen of Hopkinton laid out a bridle road across the land of the occupant of the other house, and awarded to him a part of the rangeway south of the *locus*; that in 1826 the house now occupied by the defendant being va-

cant, the selectmen, under the authority of the town, undertook to assign to the owner and occupant of the other house the rangeway up to his house — whereupon he inclosed that portion of the rangeway by extending a fence across it, and kept it up until 1833; that in 1833 the plaintiff purchased this other house and the land on which it stood, moved the house off, and the next year erected the gate across the rangeway, about thirty-six feet north of where the fence had before been put by the former occupant, and had maintained the same there during the summer seasons from 1834, until removed by the defendant, in the spring of 1859.

It further appeared that in 1857 and 1858, the selectmen of Hopkinton had permitted the defendant to work out his own highway taxes upon that part of the rangeway or old highway between the gate maintained by the plaintiff and the house of the defendant, and in 1859 the district, under the direction of the highway surveyor, repaired the same portion of the rangeway.

In the highway surveyors' warrants, for several years past, the highway north of the *locus* was described as commencing at the end of the road by the house formerly owned by Moses Story, and thence running northerly. As Moses Story once owned and occupied the house where the defendant now lives, as well as that which the plaintiff removed from his lot in 1833, it was not apparent whether the selectmen, by these warrants, intended to recognize the existence of a public highway to a point opposite the house of the defendant, or only to a point opposite the house formerly standing on the plaintiff's lot, about thirty-six feet southerly of the gate and bars mentioned in the declaration.

Upon this evidence the court found the issue for the plaintiff, subject to the opinion of the whole court; judgment to be rendered thereon, or the same to be set aside, and the issue found for the defendant, or a new trial

granted, as their opinion might be; and the questions arising were reserved.

*Marshall*, for the defendant.

1. Public easements in highways can not be extinguished by mere individual possession, however long. Where a portion of a highway, which was traveled by the public, was occupied and inclosed as private property for more than twenty years, held that, as this inclosure begun as a common and public nuisance for which one can not prescribe, no adverse possession, however long, would give title to individuals against the public. *Simmons* v. *Cornell*, 1 R. I. 519; Ang. on Highways 201. A title by prescription can not be acquired against the public. 2 Bouv. Ins. 486; 9 Dane's Abr. 413; *Wilson* v. *Storer*, 9 S. & R. 39; *Penny Pot Landing* v. *Philadelphia*, 16 Penn. (4 Harris) 79; *State* v. *Pettis*, 7 Rich. (S. C.) 390.

2. Prescriptive rights must, also, have a rightful beginning. *Jackson* v. *Halstead*, 5 Cow. 216; 2 Bouv. Ins. 486. The beginning of the right claimed by the plaintiff was a nuisance, and nuisances can not have a lawful beginning. *Simmons* v. *Cornell*, 1 R. I. 519; 3 Dane's Abr. 261; *Dewell* v. *Sanders*, cited in 3 Dane's Abr. 262.

3. The mere ceasing to enjoy an easement does not destroy a party's right, unless it appears from the facts and circumstances that he intended to abandon and not resume it. *Wilde*, J., in *Dana* v. *Valentine*, 5 Met. 13.

4. Rights claimed by prescription must be unexplained. 3 Dane's Abr. 252; Stearns on Real Actions 240; *Ricard* v. *Williams*, 7 Wheat. 59. The right claimed by the plaintiff is explained by the fact that the highway terminated at a house above and beyond the gates and bars, which was the only house above the same, and which was unoccupied at the time of their erection.

5. All the right the plaintiff had resulted from a mere permissive enjoyment, and from such an enjoyment an

adverse right can not arise. *Medford* v. *Pratt*, 4 Pick. 222; *Gloucester* v. *Beach*, 2 Pick. 60; *Kirk* v. *Smith*, 9 Wheat. 241; *Shaw*, C. J., in 8 Met. 268; 3 Dane's Abr. 252. Now did the town do any thing more than passively let the plaintiff erect and continue the gates and bars? And was there any occasion for objection until the defendant occupied the premises above? The plaintiff's right must be proved not only to have been adverse, but claimed as a right, and with the knowledge of the town. *Wallace* v. *Fletcher*, 30 N. H. 448; 2 Greenl. Ev., sec. 539; *Robinson* v. *Swett*, 3 Greenl. 316; *Tinkham* v. *Arnold*, 2 Greenl. 120; *Sargent* v. *Ballard*, 9 Pick. 251; 1 Greenl. 111; *Arnold* v. *Stevens*, 24 Pick. 110.

6. Twenty-five years' continuance of the gates and bars furnishes at most only *primâ facie* evidence of the right to continue the same. *Beardslee* v. *French*, 7 Conn. 128; *Pritchard* v. *Atkinson*, 4 N. H. 9, 12. And we submit that the explanations, &c., under our third and fourth heads, rebut this *primâ facie* evidence.

7. If the court should hold that the plaintiff had, and therefore has a right to subject the highway to gates and bars, it would operate as a virtual discontinuance of the same; and, as the statute provides a specific mode for the discontinuance of highways, it would seem that such is the only legitimate manner the same can be done.

*Flint & Bryant*, for the plaintiff.

In this case it does not appear that there ever was a public highway legally laid out over the *locus*. It only appears that anciently there was a rangeway there, occupied as a public highway; and that long since it had ceased to be so occupied; and that, for twenty-five years before the trespass, the plaintiff had kept the *locus* inclosed in his field, and held it by peaceable adverse possession. First, if the defendant showed a legal public highway ever to have existed over the *locus*, he at the same time

showed that it had long since ceased to exist, by abandonment and non-user. *State* v. *Nudd,* 23 N. H. 327 ; *Barker* v. *Clark,* 4 N. H. 383 ; 3 Kent's Com. 448, and cases cited ; 12 U. S. Dig. 490, Prescription 2 ; 17 U. S. Dig. 468, Prescription 2 ; *Miller* v. *Garloch,* 8 Barb. 153 ; *Alves* v. *Henderson,* 16 B. Mon. (Ky.) 131. Second, by twenty-five years' peaceable adverse possession the plaintiff acquired a legal title to the *locus* by prescription. *Bealey* v. *Shaw,* 6 East 215 ; *Moore* v. *Rawson,* 3 B. & C. 332–337 ; *Roe* v. *Ireland,* 11 East 280 ; *Wallace* v. *Fletcher,* 30 N. H. 434– 448 ; *Bow* v. *Allenstown,* 34 N. H. 351 ; *Dana* v. *Valentine,* 5 Met. 8.

SARGENT, J. It was proved that this rangeway had been occupied as a public highway for a long period prior to 1820 ; that in that year a part of it was assigned to the plaintiff's grantor, by the selectmen, and that, in 1826, it was all assigned to him that then laid between the two houses ; that he then extended a fence across this rangeway, at the most northerly house, which, the case finds, he kept up and maintained till 1833, when that house was taken down, and the plaintiff purchased the premises, and, in 1834, erected the gate, some thirty-six feet further north than the fence had been, which gate had been kept up, during the summer seasons, to 1859— about twenty-five years.

As the evidence is stated, it might admit of a doubt whether there was proof sufficient to negative explicitly any and all use of the way in question by the public, or by any individuals composing the public, from 1834 to 1859. But no question of that kind is raised in the argument, and we are to presume, and shall assume that there was competent evidence upon which the finding was based, provided that, in law, the public right could be extinguished by abandonment and non-user by the public, or by an open and visible continued and uninterrupted ad-

Webber *v.* Chapman.

verse possession, under a claim of right for twenty years, from and after 1834, by this plaintiff.

By the statute of 1791, which was in force when both these assignments were made, it was provided " that the inhabitants of any town in this state, at any legal meeting held for that purpose, may discontinue any high-way, &c., and may sell the land taken up in such highway, or exchange the same for some other land, where a high-way may more conveniently be laid out and occupied. And they may also sell or exchange any land, left or appropriated in such town for highways, though not actually improved for that purpose, in the same manner as they may sell or exchange the land of highways improved or occupied." N. H. Laws, (1815) 386. This provision was repealed in 1829. When the selectmen undertook to exchange a part of this rangeway for the land over which they laid the bridle road, it does not appear that they had any authority from the town to do so, and without such authority these acts would be void, as the inhabitants of the town, at a legal meeting, &c., must make the sale or exchange. But in 1826, when the select-men undertook to make an assignment of the whole range-way, to the same individual, up to the most northerly house—to the place where the fence was maintained from 1826 to 1834—the case expressly finds that they did it by or under the authority of the town. Whether that authority was sufficient to pass the land and extinguish the public easement, by a discontinuance of the way, or whether the town undertook to sell it, as land left or appropriated for highways, though not actually improved for that purpose, is not material to consider here, since if that assignment were valid and disposed of all the defendant's case, so far as it went, it would not be decisive of this issue, as the *locus in quo*, the gate, and a space thirty-six feet south of it, are not affected by said assignment; and if that had become a public highway, and was such in 1834, by dedi-

cation, by prescription, or in any other way, as there is evidence tending to show was the fact, then the question arises whether the public right has in any way been extinguished.

Upon that question the authorities are conflicting. Angel, in his work on Highways (section 168), says, that though a dedication can not be revoked by the donor, the highway itself may be relinquished or discontinued by the public; or, according to some authorities, may be lost by long continued non-user, or by adverse possession for twenty years; though, according to other authorities, no lapse of time or cessation of user will deprive the public of the right of passage over a road which has once been a highway, whenever they please to resume it.

The latter doctrine is sustained by the earlier decisions of the common law. *Gibbs*, J., in *Rex* v. *St. James*, a manuscript case, referred to in Wheat. Selwin's N. P. (5th Am. Ed.) 1362, is reported to have held that where there has been a public king's highway, no length of time during which it may not have been used will prevent the public from resuming the right, if they think proper. To the same effect, substantially, are *Rex* v. *Ward*, Cro. Car. 266; *Fowler* v. *Landers*, Cro. Jac. 446; *Vooght* v. *Winch*, 2 B. & Ald. 662; *Chad* v. *Tilsed*, 2 B. & B. 403. But the later decisions in England, and, we think, more generally in this country, favor the opposite doctrine. *Simmons* v. *Cornell*, 1 R. I. 514, together with some other modern authorities, cited in the defendant's brief, which we have not examined, do, unquestionably, sustain the ancient English doctrine before stated.

But in *Beardslee* v. *French*, 7 Cow. 125, *Hosmer*, C. J., says: "Evidence to prove a highway often consists in showing that the public have used and enjoyed the road; and the uninterruped use of it for a considerable space of time affords a strong presumption of a grant. On the other hand, the non-user of an easement of this kind for

many years is *primâ facie* evidence of a release of the right to the person over whose land the highway once ran; and although the precise limit of time, in respect to the public in such cases, has not been established, there can be no doubt that the desertion of a public road for nearly a century is strong presumptive evidence that the right of way has been extinguished." In *Commissioners of Georgetown* v. *Taylor*, 2 Bay (S. C.) 282, where land had been conveyed to the town of Georgetown for streets, but had never been used as such, but had been inclosed, and used as a farm for more than forty years, it was held that the doctrine of non-user would apply, which would forfeit a corporate right as well as misuser. The same principle has been established by the supreme court of Ohio, in *Fox* v. *Hart*, 11 Ohio 414.

And in Kentucky (*Rowan's Executors* v. *Portland*, 8 B. Mon. 232), where the fee of land, dedicated to the public use, was vested in town trustees for such use, *Marshall*, C. J., in delivering the opinion, said: "That the public right, as growing out of the dedication, in this case, was subject to be divested and defeated by adverse possession and claim of individual right, admits, as we think, of no doubt. The dedication was not to the commonwealth as a corporate being, and invested no title or interest in it. The maxim, *Nullum tempus occurrit regi*, is, therefore, inapplicable. And there is nothing to exempt the right, which vested really in the town and its citizens, to be upheld by them for the public, from the operation of the statute of limitations, or from the presumptions arising from adverse claim and possession, as they would apply in ordinary cases of private right or public easements."

And in *Knight* v. *Heaton*, 22 Vt. 480, it was held that the inclosure and occupation of land, within the limits of a highway, for twenty years, under a claim of right, made a title by prescription to the land so inclosed and occupied

as against the public. *Redfield*, J., in delivering the opinion in that case, referring to the doctrine that *nullum tempus occurrit regi*, says: (1) "Such a long possession is the most conclusive evidence of what was, at the date of the survey, considered its true location, as a long possession under a deed is the most satisfactory evidence of the true location of the thing granted. (2) If it could now be shown beyond all controversy that the survey extended as far upon the plaintiff as now claimed, the non-user, on the part of the public, and the constant use, by the plaintiff, under a claim of right, is sufficient to establish a prescriptive right in that class of cases like the present, where no statute of limitations applies." He then adds: "But it is said, I know, in the English books upon this subject, that one can not prescribe against the crown. But the same result is. obtained, in that class of cases, by presuming a grant." He refers to *Johnson* v. *Ireland*, 11 East 279, in which Lord *Ellenborough* said: "I would presume any thing capable of being presumed, in order to support an enjoyment for so long a period; as Lord *Kenyon* once said on a similar occasion, that he would not only presume one, but one hundred grants, if necessary to support so long an enjoyment."

So in *Hillary* v. *Walker*, 12 Ves. 139, 265, Lord *Eldon* observes: "I have heard it stated that this (the presumption of abandonment, or of a grant from non-user) does not apply to a case of a public road. It applies more to that than to a private road. The reason given was, that there can not be the same presumption of a surrender. If, by matter of record, the right appears vested in the public, it may be so, as there the right appears, and the surrender does not appear. But if the right does not rest upon matter of record, and the public have not enjoyed it, it is to be left to the jury to presume, and is almost conclusive, not that it was surrendered, but that it never existed; and for this special reason, one man may surrender, or, for

many reasons, may not enjoy his right; but the probability is, as to the public, that some instance of enjoyment would be shown. This is much stronger than the case of a private road, if for many years there has been no enjoyment; for what one man may relinquish another may be disposed to assert."

That case must be a good authority for the plaintiff here, as there is no record of any laying out of the highway in the case we are considering. So in *Alves* v. *Henderson*, 16 B. Mon. 131, it is said that a private citizen may, by exclusive use and adverse possession of land dedicated to the public use for the space of twenty years, acquire a valid right thereto.

It would seem from these decisions, and others tending in the same direction, that the doctrine of the ancient authorities had been widely departed from, if not entirely superseded. And we are disposed to think that the rule established in many states, as indicated by these recent decisions, is in accordance with the spirit of the age and with sound reason. We are not called upon to decide, as seems to be contended in the defendant's argument, that a trespass can ripen into a right by long continuance, or that a twenty years' continuance of a public nuisance, admitted to be such, would give the individual any rights as against the public. But from such adverse possession, continued uninterruptedly for twenty years or more on one side, and such total non-user upon the other, for the same time, (for the enjoyment, and any and all acts of enjoyment or use, must have totally ceased during that whole period) we are to infer that a highway here never existed, or if it ever existed, that it has been discontinued, or that the public right has been in some way surrendered, discharged or relinquished.

In the case of private ways, a non-user for twenty years affords a presumption that the right never existed, or has been extinguished in favor of some adverse right. As an

enjoyment for twenty years is necessary to found a presumption of a grant, the general rule is that there must be a similar non-user to raise the presumption of a release. And although there may be some exceptions to this rule in case of the non-user of certain easements, it is believed that in the case of private ways it is of very general if not of universal application. 3 Kent's Com. 448, 449; *Corning* v. *Gould,* 16 Wend. 531; *Harrard* v. *Johnson,* 3 Mason 275; *Wright* v. *Freeman,* 5 Harr. & Johns. 467; 3 Greenl. Cru., Tit. 31, chap. 1, sec. 40; Co. Lit. 114, b; *Emerson* v. *Willey,* 10 Pick. 310. See Lord *Erskine,* in *Hillary* v. *Walker,* 12 Vesey 265; *Doe* v. *Hilder,* 2 B. & Ald. 791. See *Littledale,* J., in *Moore* v. *Rawson,* 3 B. & C. 339.

And this presumption, which arises upon proof of these facts, is in this state held to be not merely a *presumptio juris,* a presumption that may be rebutted, but it is held to be a *presumptio juris et de jure,* one that is entirely conclusive in law, of the existence of a grant or right as the case may be, wherever by possibility a right can be acquired in any manner known to the law. See *Wallace* v. *Fletcher,* 30 N. H. 434, and numerous authorities there cited. This rule relates to all incorporeal hereditaments, and of course includes private ways; and *Bell,* J., in the opinion in that case, says, " We have already stated our impression that by the law, as generally recognized in this country, the party claiming title under such possession is not obliged to rely merely on a presumption of a grant, but he may rest on a presumption of right, or of any grant, reservation or record, which may be necessary to establish his title. And it seems to us that this may properly be regarded as a species of prescription established here by a course of judicial decisions, by analogy to the statute of limitations of real actions."

A grant will be presumed from lapse of time, against the state or sovereign, as well as against individuals. 1

Greenl. Ev., sec. 45; *Mayor of Kingston* v. *Horner*, Cowp. 112; *Crooker* v. *Pendleton*, 23 Me. 339; *Bow* v. *Allenstown*, 34 N. H. 351.

And the same doctrine applies with equal force, and should be applied for the same reasons, to the case of public highways. *Rex* v. *Montague*, 4 B. & C. 604; *Beardslee* v. *French*, 7 Conn. 125; *Commissioners of Georgetown* v. *Taylor*, 2 Bay 282; *Fox* v. *Hart*, 11 Ohio 414; *Rowen's Executors* v. *Portland*, 8 B. Mon. 232; *Knight* v. *Heaton*, 22 Vt. 489; *Johnson* v. *Ireland*, 11 East 279; *Hillary* v. *Walker*, 12 Vesey 139, 265; *Alves* v. *Henderson*, 16 B. Mon. 131, which have been cited and examined.

Nor do we see any cause for making a distinction between a highway by dedication and one laid out in any other way by the laws in force upon that subject, or acquired by any process or means whatever. Suppose it appears that the road was legally laid out, and that is matter of record. It is no more a public highway than as though the right had been acquired by the public by dedication. Nor are the public rights any greater in the one case than in the other, or any different. Nor is there any more inconsistency in presuming a record of the discontinuance of the highway to be lost, than there is in presuming a lost deed, or release, or grant, or, especially, as in *Bow* v. *Allenstown*, in presuming a charter or act of incorporation of a town from the royal governor of the province or the legislature of the state, to have been lost, from precisely the same evidence.

For although in England a prescription must have existed beyond time of legal memory, yet here, by analogy to the statute of limitations, an uninterrupted user of an incorporeal hereditament, under a claim of right for twenty years, as between parties under no disability, with the knowledge and without interruption of those adversely interested, affords conclusive evidence of a grant or a right, as the case may be. Such user and enjoyment may

be used as proof of a deed or record which has been lost by time or accident, or of a prescriptive right which always presupposes a grant. Such a title may well be called a prescription, agreeably to the ancient use of that term, though it depends upon a period of twenty years, and has no connection with the time of legal or actual memory. *Fletcher* v. *Wallace*, 30 N. H. *ante ; Bow* v. *Allenstown*, 34 N. H. *ante ; Dare* v. *Heathcote*, 36 E. L. & E. 564.

We shall only therefore be carrying out and applying the same doctrines and principles in this case, and for the same reasons, which have been applied by the court in the other cases in this state already referred to and we think the doctrines of those cases are not only well founded upon authority, but also upon sound reason, and that there can be no reason urged in this case against its application, which might not have been urged with equal force at least against its application in *Bow* v. *Allenstown*, and that therefore there must be, upon the finding of the court,

*Judgment for the plaintiff*.