Strafford
No. 2008-724

THE STATE OF NEW HAMPSHIRE

v.

LAKE WINNIPESAUKEE RESORT, LLC & a.

Argued: April 7, 2009
Opinion Issued: June 17, 2009

*Kelly A. Ayotte*, attorney general (*Daniel J. Licata*, attorney, on the brief and orally), for the State.

*Hinckley, Allen & Snyder LLP*, of Concord (*Christopher H.M. Carter & a.* on the brief, and *Mr. Carter* orally), for Lake Winnipesaukee Resort, LLC.

*Hall, Morse, Anderson, Miller & Spinella, P.C.*, of Concord (*Frank P. Spinella, Jr.* on the brief and orally), for Peerless Golf, Inc.

HICKS, J. The legal issue in this interlocutory appeal is whether this action is timely in light of the common law doctrine *nullum tempus occurrit regi*, or "time does not run against the king," and the general three-year statute of limitations, RSA 508:4 (1997). We affirm the denial of the respondents' motion to dismiss and remand.

The relevant facts appear within the interlocutory appeal statement. Respondent Lake Winnipesaukee Resort, LLC (LWR) sought to construct a golf course in New Durham. It retained respondent Peerless Golf, Inc. (Peerless) in May 2001 as general contractor. Early in the construction of the course, the New Hampshire Department of Environmental Services (DES) learned of certain environmental problems, investigated and ultimately issued an order in August 2001 requiring LWR to mitigate environmental damage and to cease disturbing soil. DES subsequently lifted the order and issued permits allowing construction to be completed.

The State petitioned the superior court in August 2006 for civil monetary penalties for alleged violations of RSA chapter 482-A (2001 & Supp. 2008) (entitled "Fill and Dredge in Wetlands"), and RSA chapter 485-A (2001 & Supp. 2008) (entitled "Water Pollution and Waste Disposal"). The underlying conduct complained of occurred no later than 2002.

Peerless raised a statute of limitations defense and moved to dismiss. The State argued that the doctrine *nullum tempus occurrit regi* precluded any such defense. The trial court denied the motion, but later approved this interlocutory appeal from ruling. SUP. CT. R. 8. The Trial Court (*Fauver,* J.) now submits three issues for our review:

> 1. Whether a civil action brought by the State to recover a monetary penalty under RSA [chapter] 482-A and [RSA chapter] 485-A, is subject to the three-year limitations period set forth in New Hampshire's general limitations statute, RSA 508:4[.]
>
> 2. Whether the State has an unlimited period of time within which to bring suit under civil enforcement statutes like RSA [chapter] 482-A and [RSA chapter] 485-A which do not contain specific limitations periods.
>
> 3. Whether the State is immune from RSA 508:4 under the doctrine known as *nullum tempus*[.]

In ruling upon the motion to dismiss, the trial court first recognized *nullum tempus* as an operative doctrine in New Hampshire. It noted that neither RSA chapter 482-A nor RSA chapter 485-A specifically limits the time for bringing actions to recover civil penalties. It further reasoned that the general three-year statute of limitations upon "personal actions," RSA

508:4, I, did not apply because the instant action was penal. Accordingly, it ruled that "the presumption that time does not run against the State applies."

In reviewing a trial court's ruling on a motion to dismiss, we generally consider whether the petitioner's allegations are reasonably susceptible of a construction that would permit recovery. *Thorndike v. Thorndike*, 154 N.H. 443, 446 (2006). The respondents, however, moved to dismiss based exclusively upon the statute of limitations. The statute of limitations is an affirmative defense and the respondents bear the burden of proving that it applies. *Glines v. Bruk*, 140 N.H. 180, 181 (1995). Because the trial court rejected the statute of limitations defense as a matter of law, our review is *de novo*. *See Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 830 (2005).

*I. Nullum Tempus Occurrit Regi*

■ The doctrine of *nullum tempus* is a common law rule excepting the sovereign from general limitations periods. *United States v. Hoar*, 26 F. Cas. 329, 329 (C.C.D. Mass. 1821) (No. 15,373). Justice Story noted in *Hoar* that, although the underlying policy is often believed to be that "the king is always busied for the public good, and, therefore, has not leisure to assert his right within the times limited to subjects," the rule of law is founded instead upon "the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." *Id.* at 330. In light of this policy justification — the preservation of public rights — he reasoned that the doctrine transcended the particular form of government. *See id. Nullum tempus*, therefore, is typically viewed as a privilege imparted to the federal and state governments as "incidents of . . . sovereignty." *United States v. Thompson*, 98 U.S. 486, 489 (1878).

■ Although it seldom surfaces within our jurisprudence, *nullum tempus* endures as a recognized doctrine of law in New Hampshire.

In both *In re Dockham Estate*, 108 N.H. 80 (1967), and *Reconstruction &c. Corporation v. Faulkner*, 100 N.H. 192 (1956), *nullum tempus* guided our decisions regarding the operation of nonclaim statutes — those prescribing periods within which to assert actions against executors.

In *Faulkner*, we held that New Hampshire's nonclaim statute did not preclude a petitioner finance corporation, an agency of the federal government, from asserting its claim after the running of the nonclaim statute. *Faulkner*, 100 N.H. at 194. This was because no express or implied waiver of *nullum tempus*, a "deep rooted principle of law" applicable to the federal and state governments, existed within the agency's charter. *Id.* at 193.

In *Dockham*, the nonclaim statute precluded the State's action to recover an inmate's cost of care from his estate. *Dockham*, 108 N.H. at 82. In reaching a contrary conclusion to that in *Faulkner*, Justice Duncan left undisturbed the rule of *nullum tempus*. Instead, he drew a distinction between nonclaim statutes and *general* statutes of limitation, noting the preponderance of authority holding that nonclaim statutes "apply to claims by a State or its subdivisions." *Id.* at 81. He further distinguished nonclaim statutes "since they operate to extinguish a claim, while general limitations serve merely to bar the remedy." *Id.* Finally, he noted legislation following *Faulkner* that "materially shorten[ed] the periods within which claims are required to be presented and sued upon." *Id.* Taking these considerations together, he declined to apply *nullum tempus* "in derogation of *specific* statutory requirements adopted to expedite the settlement of estates." *Id.* at 82 (emphasis added).

▮ In addition, the legislature codified the principle of *nullum tempus* almost 150 years ago when it provided that prescriptive periods do not run against public highways. *See* RSA 236:30 (1993) (originally Laws 1862, 2622:1). It further provided that "[n]o right shall be acquired by . . . adverse possession of [state] land, as against the state or its grantees." RSA 539:6 (2007). Peerless argues that these statutes sanction only "defensive" *nullum tempus*. This, however, is a distinction without a difference. While RSA 236:30 and RSA 539:6 may be asserted as defenses, they generally preserve the State's property rights and its concomitant ability to enforce those rights.

Contrary to the respondents' contention, we did not repudiate *nullum tempus* in *Town of Seabrook v. Vachon Management*, 144 N.H. 660 (2000). In *Vachon*, a town sought an injunction against the defendants' live nude dancing business. *Vachon*, 144 N.H. at 661. In reversing the dismissal of the town's petition, we rejected the argument that laches barred the town from enforcing its site plan ordinance. *Id.* at 668. We acknowledged that laches may, in "extraordinary and compelling circumstances," preclude a municipality from enforcing a site plan ordinance. *Id.* at 668 (quotation omitted). We did not reach the merits of laches, however, because the defendant knowingly violated the site plan ordinance. *Id.*

▮ *Vachon* is readily distinguishable from the instant case because there we addressed only laches, an established equitable defense separate from the statute of limitations. The defendants did not assert laches as a defense and we express no opinion whether it could defeat a claim of *nullum tempus*. We note, however, that *Vachon* is distinguishable because there a municipality, and not the State, initiated the proceedings. *See State v. Tallman*, 139 N.H. 223, 226 (1994) ("[T]he *State* does not forfeit or lose its

rights to public lands by laches." (emphasis added)); Mack, *Nullum Tempus: Governmental Immunity to Statutes of Limitation, Laches, and Statutes of Repose*, 73 DEF. COUNS. J. 180, 188 (2006) (collecting authority dismissing claim of *nullum tempus* when asserted by municipality). We further note the equitable considerations unique to *Vachon* and the fact that the language upon which the respondents rely was *dictum*.

██ Moreover, *Vachon's* precedential value can be called into question. *Vachon* correctly recognized that "the weight of legal authority provides that laches may not bar an enforcement action by a municipality acting in its governmental capacity." *Vachon*, 144 N.H. at 667. It ultimately went against the weight of authority and, relying upon *State v. Company*, 49 N.H. 240 (1870), reasoned that "the doctrine that 'no laches can be imputed to the government, and against it no time runs so as to bar its rights, is not law in New Hampshire.' " *Id.* at 667-68 (quoting *Company*, 49 N.H. at 248).

As the State points out, however, the language *Vachon* relied upon came not from *Company's* holding, but from the preliminary section of that opinion recounting the parties' appellate arguments. *See Company*, 49 N.H. at 248. The quoted argument was grounded in *Webber v. Chapman*, 42 N.H. 326 (1861), where we said: "A grant will be presumed from lapse of time, against the state or sovereign, as well as against individuals. And the same doctrine applies with equal force, and should be applied for the same reasons, to the case of public highways." *Webber*, 42 N.H. at 336-37 (citations omitted).

██ *Webber*, however, was abrogated the next year by Laws 1862, 2622:1, and when the issue of acquiring prescriptive rights in public property arose in *Company*, we rejected *Webber* as "opposed to reason, and to the weight of authority, as well as to the spirit of our legislation." *Company*, 49 N.H. at 257 (quotation omitted). Although in *Company* we found it unnecessary to decide whether *nullum tempus* was part of our common law, we approved of its underlying rationale: "Experience does not justify the presumption that the community at large will assert their public rights, with the same promptness with which individuals assert their private rights." *Company*, 49 N.H. at 252. *Company's* holding was "strongly supported" by the "well-settled principle that the state is not bound by general statute of limitations, unless expressly named therein." *Id.* at 254.

The respondents alternatively invite us to abolish *nullum tempus*. They contend that the policies behind *nullum tempus* are no longer served in modern government. We are not convinced, however, that technological advances eliminate the possibility for "public rights, revenues, and property . . . [to be lost or injured] by the negligence of public officers." *Hoar*,

26 F. Cas. at 330; *see State, Dept. of Transp. v. Sullivan*, 527 N.E.2d 798, 800 (Ohio 1988); *cf. Lorenz v. N.H. Admin. Office of the Courts*, 152 N.H. 632, 634 (2005).

■ ■ The respondents contend that legislative waivers of sovereign immunity had the ancillary effect of abrogating *nullum tempus*. While some courts reject *nullum tempus* in view of their states' abrogation of sovereign immunity, *see State ex rel. Condon v. City of Columbia*, 528 S.E.2d 408, 413 (S.C. 2000); *Shootman v. Department of Transp.*, 926 P.2d 1200, 1205 (Colo. 1996) (en banc); *N.J. Educ. Facilities v. Gruzen*, 592 A.2d 559, 564 (N.J. 1991) (applying holding only prospectively), *superseded by statute*, N.J. STAT. ANN. § 2A:14-1.2 (West Supp. 2009), it is well established that sovereign immunity and *nullum tempus* are distinct doctrines. *See, e.g., Fennelly v. A-1 Machine & Tool Co.*, 728 N.W.2d 163, 169 n.3 (Iowa 2006); *Com., Dept. of Transp.v. J. W. Bishop & Co.*, 439 A.2d 101, 104-05 (Pa. 1981); *cf. In re Estate of Raduazo*, 148 N.H. 687, 693 (2002) (concluding that sovereign immunity did not shield State from offset where it acted as claimant), *cert. denied*, 539 U.S. 942 (2003). Furthermore, our legislative waivers of sovereign immunity supply no textual support for the respondents' argument, *see* RSA ch. 99-D (2001 & Supp. 2008); RSA 491:8 (1997); RSA ch. 541-B (2007 & Supp. 2008), and "[w]e will not construe a statute as abrogating the common law unless the intention to do so is clearly expressed in the statute." *Wisniewski v. Gemmill*, 123 N.H. 701, 705-06 (1983).

## II. RSA 508:4

We turn to the parties' arguments concerning the construction of the general three-year statute of limitations, RSA 508:4, I. RSA 508:4, I, provides, in relevant part: "Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of . . . ." RSA 508:4, I.

■ Nothing within RSA chapter 508 clearly classifies the instant action as a "personal action." Personal actions, which are not defined by statute, include those to recover for personal injury, *Therrien v. Sullivan*, 153 N.H. 211, 213 (2006), legal malpractice, *Therrien*, 153 N.H. at 213, and contract, *A&B Lumber Co. v. Vrusho*, 151 N.H. 754, 756 (2005). The instant action, however, bears little resemblance to these theories of recovery.

Sources extrinsic to RSA 508:4 are conflicting. On one hand, this action might be viewed, as did the trial court, as penal and not personal. *See* BLACK'S LAW DICTIONARY 33 (8th ed. 2004) (defining "personal action" and "penal action"); 1 AM. JUR. 2D *Actions* §§ 27, 31 (2005). While Peerless argues that RSA 616:9 (2001), the general two-year statute of limitations

upon penal actions, by analogy limits civil penalty actions, the legislature amended RSA 616:9 in 1990 to "apply only to suits or prosecutions brought under . . . chapter [616]." Laws 1990, 191:3. Accordingly, it does not apply elsewhere.

On the other hand, the term "person," to the extent it sheds light upon the meaning of "personal actions," RSA 508:4, I, is defined to include "bodies . . . politic." RSA 21:9 (2000). Furthermore, *State ex rel. Smith v. Kermit Lumber*, 488 S.E.2d 901, 913 (W. Va. 1997), although otherwise distinguishable, nevertheless categorized a civil penalty action as personal.

■ In either case, RSA 508:4, I, does not "clear[ly] and indisputabl[y]," *Hoar*, 26 F. Cas. at 330, include this action. We follow the doctrine that unless a statute of limitations expressly waives *nullum tempus* by making a limitations period specifically applicable to the State, the sovereign remains immune from general statutes of limitations. *United States v. Mine Workers*, 330 U.S. 258, 272-73 (1947); *Gibson v. Chouteau*, 80 U.S. 92, 99 (1871); *see Board of Educ. v. A, C and S, Inc.*, 546 N.E.2d 580, 603 (Ill. 1989); *cf. Krzysztalowski v. Fortin*, 108 N.H. 187, 189 (1967) ("The extent to which . . . [sovereign] immunity should be preserved or waived is purely a legislative question." (quotation omitted)).

*III. Part I, Article 14*

■ Finally, Peerless argues that the State's pre-petition delay violates Part I, Article 14 of the State Constitution, which provides, in relevant part, that "right and justice" be obtained "promptly, and without delay." N.H. CONST. pt. I, art. 14. This constitutional mandate applies to both civil and criminal proceedings. *See Town of Nottingham v. Newman*, 147 N.H. 131, 134-35 (2001); *State v. Stow*, 136 N.H. 598, 600, 602 (1993). Peerless argues that the criminal standard applies here and guarantees its right to a speedy trial, which it argues the State violated through pre-petition delay. The State contends that this argument exceeds the scope of the interlocutory appeal. We agree.

■ Even assuming the instant action is criminal under the test enunciated in *State v. Fitzgerald*, 137 N.H. 23, 26 (1993), and that this renders the speedy trial analysis appropriate, the speedy trial right would not attach until this action *commenced*. *See State v. Philibotte*, 123 N.H. 240, 244 (1983); *United States v. Marion*, 404 U.S. 307, 320-21 (1971). Thus, even if meritorious, Peerless' argument concerning the violation of its speedy trial right is outside the scope of the second interlocutory issue — whether the State has unlimited time to *initiate* the instant action.

Delay in initiating proceedings is protected against by the strictures of due process. *See* 2 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, CRIMINAL

PRACTICE AND PROCEDURE § 26.14, at 162 (4th ed. 2003). Although Peerless' brief could be read to assert a due process violation for delay in bringing the instant action, *see, e.g., State v. Varagianis*, 128 N.H. 226, 228 (1986), our review of the proceedings below shows that Peerless advances this argument for the first time on appeal. Peerless, therefore, failed to properly preserve it. *See Chadwick v. CSI, Ltd.*, 137 N.H. 515, 520 (1993). Moreover, the argument is inadequately briefed. *See Mortgage Specialists v. Davey*, 153 N.H. 764, 792-93 (2006). Accordingly, we express no opinion whether such a due process claim would prevail in the instant action.

*Affirmed and remanded.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.