NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2016-0212

CITY OF ROCHESTER

v.

MARCEL A. PAYEUR, INC. & a.

Argued: October 6, 2016
Opinion Issued: December 13, 2016

Primmer Piper Eggleston & Cramer PC, of Manchester (Thomas J. Pappas, Matthew J. Delude, and Adam R. Mordecai on the brief, and Mr. Pappas orally), for the plaintiff.

Preti, Flaherty, Beliveau, & Pachios LLP, of Concord (Kenneth E. Rubinstein and Nathan R. Fennessy on the brief, and Mr. Rubinstein orally), for defendant Chicago Bridge & Iron n/k/a CB&I, Inc.

McLane Middleton, Professional Association, of Manchester (Jennifer L. Parent and Nicholas F. Casolaro on the brief, and Ms. Parent orally), for defendant Whitman & Howard n/k/a AECOM Technical Services, Inc.

Morrison Mahoney, LLP, of Manchester (Ralph N. Suozzo), for defendant Marcel A. Payeur, Inc., filed no brief.

Sheehan, Phinney, Bass & Green, P.A., of Manchester (Peter S. Cowan), for defendant Wright-Pierce, filed no brief.

Gagliuso & Gagliuso Professional Association, of Merrimack (Richard C. Gagliuso on the brief), for Associated Builders and Contractors, New Hampshire/Vermont Chapter, as amicus curiae.

LYNN, J. This is an interlocutory appeal by the plaintiff, the City of Rochester (City), from an order of the Superior Court (Houran, J.) dismissing the City's claims against two of the four defendants it sued for damages. On appeal, the City asserts that the trial court erred in refusing to apply the doctrine of nullum tempus occurrit regi ("time does not run against the king") so as to exempt the City's claims against defendants Chicago Bridge & Iron n/k/a CB&I, Inc. (CB&I) and Whitman & Howard n/k/a AECOM Technical Services, Inc. (AECOM) from the bar of the six-year statute of limitations that was in effect when CB&I and AECOM substantially completed their contract with the City. See RSA 508:4, I (1983) (amended 1986). We affirm and remand.

I

The following facts are drawn from the interlocutory appeal statement. The City's Department of Public Works owns and operates the Rochester Water System, which provides water to residents of the City. The City operates three water storage tanks, one of which is the Rochester Hill Water Storage Tank (the Tank). AECOM designed the Tank and oversaw its construction by CB&I. CB&I completed the Tank in 1985, and it was placed into service that same year.

In June 2009, the City contracted defendant Marcel A. Payeur, Inc. (Payeur) to service the Tank by recoating the Tank's interior and exterior, installing a mixer, and modifying the Tank to accommodate the mixer. Defendant Wright-Pierce, a Maine corporation, performed the engineering and design work for the modification project. Payeur substantially completed the modification, under Wright-Pierce's supervision, in November 2009.

In December 2011, the Tank developed a leak. The City had to evacuate nearby residents, drain the Tank, and remove it from service. The City

inspected the Tank and discovered that Payeur had failed to properly construct the modifications in accordance with Wright-Pierce's design.

The City filed suit against Payeur in November 2012, alleging breach of contract, breach of warranty, negligence, and unjust enrichment. In April 2014, the City named CB&I, AECOM, and Wright-Pierce as additional defendants. The City's amended complaint alleged that Wright-Pierce had failed to properly supervise Payeur's 2009 modification work; it also alleged that, in 1985, CB&I had failed to properly construct the Tank in accordance with AECOM's design, and AECOM had failed to adequately monitor CB&I.

CB&I and AECOM moved to dismiss the City's claims against them, arguing that the claims were time-barred by RSA 508:4. The City objected, arguing that the doctrine of nullum tempus precluded the statute of limitations from running against the City. The trial court granted CB&I and AECOM's motions to dismiss. Thereafter, the trial court approved, and we accepted, this interlocutory appeal.

II

The statute of limitations is an affirmative defense and thus a matter as to which defendants CB&I and AECOM bear the burden of proof. Glines v. Bruk, 140 N.H. 180, 181 (1995). However, in ruling on the motion to dismiss, the trial court assumed the factual allegations of the complaint to be true, and ruled as a matter of law that the doctrine of nullum tempus was inapplicable and that the statute of limitations barred the City's claims against CB&I and AECOM. Therefore, our review is de novo. See State v. Lake Winnipesaukee Resort, 159 N.H. 42, 45 (2009) ("Because the trial court rejected the statute of limitations defense as a matter of law, our review is de novo.").

The City submits two issues for our review: (1) "Whether the doctrine of nullum tempus applies to municipalities to bar the application of statutes of limitation[s] to claims brought by a municipality"; and (2) "Whether the doctrine of nullum tempus bars the application of RSA 508:4 to the City's claims here."

III

"The doctrine of nullum tempus is a common law rule excepting the sovereign from general limitations periods." Lake Winnipesaukee Resort, 159 N.H. at 45. Although "nullum tempus endures as a recognized doctrine of law in New Hampshire," id., our case law applying the doctrine is sparse.[1] We

_____

[1] The historical justification for the doctrine is that the king (and, by analogy, modern day sovereigns) cannot be expected to be as vigilant as individuals are in preserving their rights. State v. Franklin Falls Co., 49 N.H. 240, 252 (1870). Sovereigns are impersonal and thus are

applied the doctrine in <u>Lake Winnipesaukee Resort</u>, when we held that <u>nullum tempus</u> exempted a state civil enforcement action from the current three-year statute of limitations for personal actions, RSA 508:4, I (2010). <u>Lake Winnipesaukee Resort</u>, 159 N.H. at 45-49. In <u>In re Dockham Estate</u>, 108 N.H. 80, 82 (1967), we declined to apply <u>nullum tempus</u> to bar the application of a non-claim statute of limitations to a state action to recover an inmate's cost of care from his estate. <u>But see</u> <u>Reconstruction &c. Corp. v. Faulkner</u>, 100 N.H. 192, 194 (1956) (holding that a non-claim statute did not preclude a federal government agency from asserting its claim after the running of the limitations period). Additionally, we note that the New Hampshire legislature has codified the doctrine with respect to adverse possession and prescriptive easements. <u>See</u> RSA 236:30 (2009) (prohibiting prescriptive periods from running against public highways); RSA 477:33 (2013) (prohibiting, in some circumstances, the acquisition of prescriptive rights in state waters); RSA 477:34 (2013) (prohibiting the acquisition of prescriptive rights in public grounds); RSA 539:6 (2007) (prohibiting adverse possession of state lands).

We have not previously determined whether <u>nullum tempus</u> applies to claims asserted by municipalities.[2]

IV

The City urges us to apply the doctrine of <u>nullum tempus</u> to its contract claims against the defendants. We decline to do so because applying <u>nullum tempus</u> to a municipality's contract claims is not supported by the public

limited to acting through agents such as state officials, who "are generally few in number and fully occupied with the regular routine of official duties." <u>Id</u>. Therefore, the doctrine is thought to further "the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers." <u>Lake Winnipesaukee Resort</u>, 159 N.H. at 45 (quotation omitted).

[2] Other states faced with this issue have dealt with it in different ways. Some states do not extend <u>nullum tempus</u> to municipalities in any circumstances. <u>See, e.g.</u>, <u>City of Lincoln, Neb. v. Windstream Nebraska, Inc.</u>, 800 F. Supp. 2d 1030, 1035 (D. Neb. 2011) ("[N]ullum tempus . . . only applies in favor of the sovereign power, and has no application to municipal corporations . . . ." (quotation omitted)). Other states extend <u>nullum tempus</u> to municipalities to the same extent that they apply the doctrine to their state government. <u>See, e.g.</u>, <u>Enroth v. Memorial Hosp. at Gulfport</u>, 566 So. 2d 202, 206 (Miss. 1990) (recognizing that, by state constitution and statute, <u>nullum tempus</u> applies to state and all political subdivisions of state, including municipalities). The remaining states that have addressed the issue apply <u>nullum tempus</u> to municipalities in a limited fashion, using a variety of tests to determine when it applies. <u>See, e.g.</u>, <u>Fennelly v. A–1 Machine & Tool Co.</u>, 728 N.W.2d 163, 170 (Iowa 2006) ("[N]ullum tempus doctrine does not exempt actions by municipalities and counties in Iowa from a general statute of limitations unless the action involves a public or governmental activity, as opposed to a private or proprietary activity."); <u>State v. Goldfarb</u>, 278 A.2d 818, 822 (Conn. 1971) ("[A] subdivision of the state, acting within its delegated governmental capacity, is not impliedly bound by the ordinary statute of limitations."); <u>Brown v. Trustees of Schools</u>, 79 N.E. 579, 579-80 (Ill. 1906) (applying <u>nullum tempus</u> to municipalities with regard to "public rights" and "property held for public use," but declining to apply <u>nullum tempus</u> to municipalities with regard to "contracts or mere private rights").

4

policy underlying nullum tempus and undermines the public policy underlying statutes of limitations.[3]

The public policy supporting application of nullum tempus to adverse possession claims against public property and state civil enforcement actions does not support extending the doctrine to a municipality's contract claims. In cases of adverse possession, the very basis for the claim is that the claimant has committed a trespassory invasion of the owner's property rights that continued for the applicable limitations period. See, e.g., Bonardi v. Kazmirchuk, 146 N.H. 640, 642 (2001). "[T]he nature of the use must have been such as to show that the owner knew or ought to have known that the right was being exercised, not in reliance upon the owner's toleration or permission, but without regard to the owner's consent." Sandford v. Town of Wolfeboro, 143 N.H. 481, 484 (1999) (emphasis added; brackets and quotation omitted). Given the vast extent and wide variety of publicly-owned land, water and easement rights, as well as governmental bodies' need to rely on the finite universe of public employees, who are otherwise occupied with their regular duties, to detect encroachments on these rights, application of the doctrine of nullum tempus to adverse possession claims serves the important purpose of protecting public property rights from loss that could otherwise result from failure to detect unknown encroachments.

Similarly, in the case of enforcement actions to recover fines or penalties for violations of state statutes or local ordinances, governmental agents are not always able to promptly discover the existence of such violations. State agents "do not generally institute proceedings to punish violations of the laws, except at the instigation of individuals." State v. Franklin Falls Co., 49 N.H. 240, 252 (1870). As a result, "it may be doubted whether [government officials] are ever aware of a very large proportion of the infringements on the rights of the state." Id. Thus, again in this context, nullum tempus operates to protect the public good by preventing wrongdoers from benefitting from the limitations inherent in governmental bodies' enforcement prowess, to the detriment of public rights.

Conversely, public bodies such as municipalities are aware of the contracts into which they enter. Thus, a municipality's contractual undertakings are unlikely to lead to unknown violations of public rights. Rather, municipalities generally are as equipped as private individuals to vigilantly enforce their contract rights in a timely fashion. Furthermore, when a municipality enters into a contract, it acts as does any private party: "[A] municipal corporation is bound by, and may sue and be sued on, all contracts which it may legally enter into in the same manner as a private corporation or

---

[3] The City argues that if we apply nullum tempus to municipalities on a limited basis, we should use either an "ultimate right at issue" test or a "discretionary function" test to determine when the doctrine applies. However, in light of our holding, we need not decide at this time whether the ultimate right at issue test, discretionary function test, or another test would be proper.

an individual." <u>Great Lakes Aircraft Co. v. City of Claremont</u>, 135 N.H. 270, 278-79 (1992) (quotation omitted); <u>see also</u> RSA 31:3 (2000) (authorizing municipal corporations to make contracts); RSA 31:1 (2000) (stating that municipalities may sue and be sued).

Additionally, municipalities cannot raise sovereign immunity as a defense to contract claims. <u>See</u> <u>Great Lakes</u>, 135 N.H. at 279 ("The immunity of government from liability on contracts has never been regarded as applicable to local governmental units."). Although sovereign immunity and <u>nullum tempus</u> are distinct doctrines, both have their origins as incidents of sovereignty. <u>See</u> <u>Lake Winnipesaukee Resort</u>, 159 N.H. at 45; <u>Sousa v. State</u>, 115 N.H. 340, 342 (1975). Thus, a municipality's inability to raise sovereign immunity as a defense to contract claims demonstrates that when a municipality enters a contract, it is acting as does a private party and not as a sovereign.

In sum, municipalities enter into contracts in the same manner as private parties, and they are equally equipped to assert their contract rights as are private parties. Because municipalities are not at a disadvantage to assert their contract rights, the doctrine of <u>nullum</u> <u>tempus</u> is not necessary to protect the public's interest in those rights.[4]

Allowing a municipality to bring contract claims notwithstanding RSA 508:4 would undermine the public policy behind statutes of limitations. Statutes of limitations "reflect the fact that it becomes more difficult and time-consuming both to defend against and to try claims as evidence disappears and memories fade with the passage of time." <u>Keeton v. Hustler Magazine, Inc.</u>, 131 N.H. 6, 14 (1988). Statutes of limitations both insure that defendants receive timely notice of actions against them and protect defendants from stale or fraudulent claims. <u>Id</u>. at 14; <u>Dupuis v. Smith Properties, Inc.</u>, 114 N.H. 625, 629 (1974). "Such statutes thus represent the legislature's attempt to achieve a balance among State interests in protecting both forum courts and defendants generally against stale claims and in insuring a reasonable period during which plaintiffs may seek recovery on otherwise sound causes of

_____

[4] The City argues that RSA 477:33, RSA 477:34, and our case law support the application of <u>nullum</u> <u>tempus</u> to municipalities. To the extent that the City contends that these authorities support the application of <u>nullum</u> <u>tempus</u> to a municipality's contract actions, we disagree for the reasons stated in the text. Although RSA 477:33 and RSA 477:34 prohibit individuals from acquiring prescriptive rights against public lands and state waters, which mirrors the effects of <u>nullum</u> <u>tempus</u>, the statutes are silent regarding the common-law <u>nullum</u> <u>tempus</u> doctrine, both generally and as applied to contract actions. The City also relies upon our case law for the principle that "[a] public right once acquired cannot be lost to an individual by adverse use." <u>Windham v. Jubinville</u>, 92 N.H. 102, 104 (1942); <u>see also</u> <u>Manchester v. Hodge</u>, 74 N.H. 468, 470 (1908); <u>Thompson v. Major</u>, 58 N.H. 242, 244 (1878). However, each of these cases involved adverse possession of public highways or lands, which is prohibited by statute. Consequently, these cases provide no support for the application of <u>nullum</u> <u>tempus</u> to a municipality's contract action.

action." Keeton, 131 N.H. at 14.  Because statutes of limitations are grounded in public policy, parties cannot agree by contract made in advance of the accrual of a cause of action for breach to extend or avoid application of the limitations period.  See West Gate Village Assoc. v. Dubois, 145 N.H. 293, 299 (2000).

Here, the trial court ruled that the City's claims were time-barred by RSA 508:4 unless nullum tempus operated to exempt the City's claims from that statute of limitations.  The former version of RSA 508:4 that governs this case bars contract claims after six years, and the City did not bring its claims until many years after the expiration of the limitations period.  Permitting the City to bring its contract claims would unfairly subject the defendants to the harms against which statutes of limitations were designed to protect.  Employees of the City and the defendants may have changed jobs, retired, or died.  The memories of those witnesses that can still be located will no doubt have faded.  Other physical evidence may have been lost or destroyed.  Furthermore, because the defendants would not have expected such a stale claim to be enforceable, they had no incentive to preserve evidence.  Therefore, because the passage of time has made it more difficult for the defendants to defend against the City's claims, it would be unfair and would undermine the public policy supporting statutes of limitations to allow the City to bring its twenty-nine-year-old contract claims.

Because applying the doctrine of nullum tempus to a municipality's contract claims is not supported by the public policy underlying nullum tempus and undermines the public policy underlying statutes of limitations, we conclude that nullum tempus does not bar the application of RSA 508:4 to the City's contract claims.  Therefore, we affirm the trial court's grant of the defendants' motions to dismiss.  In light of our holding, we need not decide at this time whether municipalities, in other contexts, may properly invoke nullum tempus.

Affirmed and remanded.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

7