Rockingham
No. 2012-485

MAPLEVALE BUILDERS, LLC & a.

v.

TOWN OF DANVILLE

Argued: February 13, 2013
Opinion Issued: June 5, 2013

100

*Sumner F. Kalman, Attorney at Law, P.C.*, of Plaistow (*Thea S. Valvanis* and *Sumner F. Kalman* on the brief, and *Mr. Kalman* orally), for the petitioners.

*Donahue, Tucker & Ciandella, PLLC*, of Exeter (*Robert M. Derosier* and *John J. Ratigan* on the brief, and *Mr. Derosier* orally), for the respondent.

*Paul G. Sanderson*, of Concord, by brief, for the NH Local Government Center, as *amicus curiae*.

CONBOY, J. The respondent, Town of Danville (Town), appeals an order of the Superior Court (*McHugh*, J.) abating "land use change tax" (LUCT) assessments issued to the petitioners, Maplevale Builders, LLC (Maplevale), Hoyt Real Estate Trust (Hoyt), and John H. and Maryann Manning, on the basis that the LUCT bills were untimely under RSA 79-A:7 (Supp. 2006) (amended 2009, 2010, 2012). We vacate and remand.

The following facts are supported by the record or are otherwise undisputed. In 2008, Hoyt appeared before the Danville Planning Board (Planning Board) seeking approval of a fifteen-lot residential subdivision. At that time, the parcel on which Hoyt sought to construct the subdivision qualified for current use taxation, *see* RSA 79-A:1 (2012), :5 (2012); that is, the parcel was open space land, *see* RSA 79-A:2, IX (2012), and was, therefore, taxed at a reduced rate. *See Dana Patterson, Inc. v. Town of Merrimack*, 130 N.H. 353, 355 (1988). On November 14, 2008, Hoyt began constructing a road to serve the subdivision, which was depicted on the

subdivision plans as the "roadway." On April 23, 2009, the Planning Board granted final approval to Hoyt for its subdivision. By the time Hoyt received final subdivision approval, it had finished constructing the road.

On January 28, 2010, Hoyt received a certificate of registration for the subdivision from the Attorney General's Office. *See* RSA 356-A:4, I (2009) (requiring subdividers to register subdivisions with the State before offering or disposing of "any lot, parcel, unit or interest in subdivided lands located in this state"). Thereafter, Hoyt began to sell subdivision lots 45-1 through 45-15 to Maplevale. Prior to developing each lot, Maplevale applied to the Town for a building permit. Between March 23, 2010, and May 25, 2010, Maplevale received building permits for five lots — 45-1, 45-3, 45-6, 45-13, and 45-14. On June 2, 2010, the Town issued LUCT bills for the road, as well as three of the five lots — 45-6, 45-13, and 45-14 (June 2010 LUCT bills). *See* RSA 79-A:7, I (authorizing assessing officials to levy taxes upon land previously qualifying for current use taxation when the land "is changed to a use which does not qualify for current use assessment"). Thereafter, Maplevale received building permits for the remaining lots, with the exception of lots 45-8 and 45-15. On February 23, 2011, the Town issued LUCT bills to the petitioners for lots 45-1, 45-3, 45-8, and the remaining lots for which Maplevale received building permits (February 2011 LUCT bills).

On January 24, 2011, Maplevale petitioned the superior court to abate the June 2010 LUCT bills, *see* RSA 79-A:10 (2012), alleging that they were "excessive" compared to the property values on the "change [in] use date," and that the Town used "an incorrect 'change in use date.' " On September 21, 2011, the petitioners each filed petitions seeking to abate the February 2011 LUCT bills. The petitions alleged that the LUCT bills were "excessive" and "untimely." The petitions were consolidated, and a bench trial was held in April 2012.

Following trial, the trial court ruled that because all of the LUCT bills were untimely, the assessments could not be imposed. It found that by April 23, 2009, all of the subdivision lots had "changed in use" because, as of that date, the Planning Board had granted final subdivision approval and the road had been completed. Accordingly, because the LUCT bills were not issued within the twelve-month statutory period, the Town was prohibited from imposing the assessments under RSA chapter 79-A. *See* RSA 79-A:7, II(c). Thus, the court ordered that the LUCT assessments "be removed and all monies paid to the [T]own for this tax be refunded." The trial court did not address whether the LUCT bills were "excessive." The Town appealed.

The Town first argues that the trial court erred in ruling that the lots had "changed in use" as of April 23, 2009. This presents an issue of statutory construction. *See Formula Dev. Corp. v. Town of Chester*, 156 N.H. 177, 178

(2007). We are the final arbiter of the intent of the legislature as expressed in the words of the statute. *Id.* When construing the statute's meaning, we first examine its language, and where possible, ascribe the plain and ordinary meanings to the words used. *Id.* at 178-79. If the language used is clear and unambiguous, we will not look beyond the language of the statute to discern legislative intent. *Id.* at 179. We will, however, construe all parts of the statute together to effectuate its overall purpose. *Id.* We review issues of statutory construction *de novo. See id.* at 178.

RSA chapter 79-A reflects the legislature's determination that it is in the public interest "to encourage the preservation of open space" and "to prevent the loss of open space due to property taxation at values incompatible with open space usage." RSA 79-A:1. To effectuate this purpose, open space land may be taxed at its current use, rather than at its highest and best use. *See* RSA 79-A:5; *see also Appeal of Estate of Van Lunen,* 145 N.H. 82, 86 (2000). Land in current use is subject to the LUCT when its use is changed to a use that no longer qualifies as current use. *See* RSA 79-A:7, I. The LUCT is due and payable by the owner or other responsible party to the town or city in which the property is located "at the time of the change in use." RSA 79-A:7, II.

To determine when action by an owner of a parcel has caused the parcel to change in use, we look to RSA 79-A:7, IV(a), which provides, in pertinent part, that land use shall be considered changed and the LUCT shall become payable when "[a]ctual construction begins on the site causing physical changes in the earth, such as building a road to serve existing or planned residential, commercial, industrial, or institutional buildings." The trial court relied upon this provision in determining that the road and the surrounding lots had all changed in use as of April 23, 2009. It ruled that the "clear import" of the provision was "that the legislature contemplated a block, if not all of the land in question, [would] come out of current use when significant physical change occurred." The trial court found that "the [petitioners'] action with respect to installation of the road and obtaining of all of the necessary permits and approval . . . constitutes 'actual physical change' with respect to the property."

■ RSA 79-A:7, IV(a), however, does not resolve the issue before us. RSA 79-A:7, IV(a) addresses only the type of action necessary to remove a particular lot from current use for purposes of applying the LUCT. *See Formula Dev. Corp.,* 156 N.H. at 181. The parties agree that the road had undergone physical changes as of April 23, 2009. The question before us is the effect the road changes had on surrounding, yet-to-be developed land on which the lots had been laid out, but which had not undergone any

physical changes. To answer this question, we look to RSA 79-A:7, V, which addresses "[t]he *amount* of land considered changed in use." *Formula Dev. Corp.*, 156 N.H. at 179.

The trial court applied the version of RSA 79-A:7, V in effect on April 23, 2009, which neither party contests. RSA 79-A:7, V provides that land is taken out of current use based upon "the number of acres on which an actual physical change has taken place . . . and land not physically changed shall remain under current use assessment." This represents the general rule. However, there are exceptions. On April 23, 2009, RSA 79-A:7, V(a) provided:

> When a road is constructed or other utilities installed pursuant to a development plan which has received all necessary local, state or federal approvals, all lots or building sites, including roads and utilities, shown on the plan and served by such road or utilities shall be considered changed in use, with the exception of any lot or site, or combination of adjacent lots or sites under the same ownership, large enough to remain qualified for current use assessment under the completed development plan . . . .

The parties dispute the meaning of this exception. The Town argues that the exception allows it to issue LUCT bills on a lot-by-lot basis when disqualifying events (*i.e.*, physical changes) occur to each individual lot. This interpretation is supported by our precedent. In *Van Lunen*, we held that this version of RSA 79-A:7, V(a) allowed local assessors to "impose the [LUCT] on a lot-by-lot basis as disqualifying events occurred for each individual lot." *Van Lunen*, 145 N.H. at 88. We read the plain language of the statute to allow for a lot-by-lot assessment "in approved subdivisions which otherwise qualify for immediate removal of all qualified lots in those instances where a lot or site, or combination of adjacent lots or sites under the same ownership, is large enough to remain qualified for current use assessment under the completed development plan." *Id.* at 87 (quotation and brackets omitted). We stated, "When these conditions are met, lots or sites are not immediately removed from current use when road construction . . . begins." *Id.*

The petitioners argue, on the other hand, that the exception does not support a lot-by-lot assessment. They cite the concurring opinion in *Formula Dev. Corp.*, which opined that "our statutory interpretation in *Appeal of Estate of Van Lunen* was incorrect. There is nothing in the plain language of RSA 79-A:7, V(a) that permits lot-by-lot assessment." *Formula Dev. Corp.*, 156 N.H. at 185 (Dalianis, J., concurring specially). The concurrence stated that the court in *Van Lunen* "erred by focusing upon whether such lots or sites existed when construction began, instead of upon

whether they were intended to exist once the development plan was *completed." Id.* The concurrence concluded:

> If the completed development plan contemplates that there will be undeveloped adjacent lots or sites that will be large enough to qualify for current use assessment, then these undeveloped adjacent lots or sites remain in current use. However, even if the completed development plan contemplates that there will be such undeveloped adjacent lots, the other lots serviced by the road or utilities still come out all at once.

*Id.* at 185-86.

 In *Van Lunen*, we interpreted the statute at issue to allow for a lot-by-lot determination. *See Van Lunen*, 145 N.H. at 87-88. *Van Lunen* remains our law. Thus, in order to accept the petitioners' argument, we would necessarily have to overrule *Van Lunen*. Even if we were to agree with the petitioners that *Van Lunen* was incorrectly decided or poorly reasoned, "[p]rincipled application of stare decisis requires a court to adhere even to poorly reasoned precedent in the absence of some special reason over and above the belief that a prior case was wrongly decided." *Ford v. N.H. Dep't of Transp.*, 163 N.H. 284, 290 (2012) (quotation omitted). Generally, we will overrule a prior decision only after considering:

> (1) whether the rule has proven to be intolerable simply by defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

*Id.* Having failed to brief any of the four stare decisis factors, the petitioners have not persuaded us that our decision in *Van Lunen* must be overruled. *Cf. id.*

 Further, to the extent that the concurring opinion in *Formula Dev. Corp.* created any doubt as to the proper interpretation of RSA 79-A:7, V(a), the issue has been resolved by our legislature. After *Formula Dev. Corp.* was decided, the legislature amended RSA 79-A:7, V(a) to specifically remove the phrase "under the completed development plan." *See* Laws 2009, 84:1. Where a legislative amendment is enacted after a controversy arises as to the interpretation of a statute, "it is logical to regard the amendment as a legislative interpretation of the original act." *Cecere v*

*Loon Mt. Recreation Corp.*, 155 N.H. 289, 293 (2007) (quotation omitted); *see also Blue Mountain Forest Ass'n v. Town of Croydon*, 119 N.H. 202, 205 (1979). The legislature's 2009 amendment to RSA 79-A:7, V(a) represents strong evidence that our interpretation in *Van Lunen* was correct. In reaching its conclusion that the prior version of the statute did not allow for a lot-by-lot assessment, the concurrence in *Formula Dev. Corp.* emphasized the word "completed" in the qualifying phrase "under the completed development plan." *See Formula Dev. Corp.*, 156 N.H. at 185. The legislature removed the qualifying phrase from the statute, thus clarifying its preference for the interpretation in *Van Lunen*.

■ ■ Viewing the trial court's decision in light of *Van Lunen*, we conclude that it erred in ruling that all of the lots of the subdivision changed in use on April 23, 2009, when the Planning Board granted final subdivision approval and the road had been completed. Under RSA 79-A:7, V(a), road construction alone does not necessarily remove from current use all lots or sites served by the road. *See Van Lunen*, 145 N.H. at 87. Also, "[t]he obtaining of subdivision approval does not by itself change the use to which the land is put." *Frost v. Town of Candia*, 118 N.H. 923, 924 (1978). Nor do we find the combination of the road's completion and the Town's grant of subdivision approval sufficient to remove all surrounding lots from current use.

■ Instead, the Town is "entitled to impose the [LUCT] on a lot-by-lot basis as disqualifying events occur[ ] for each individual lot," so long as the conditions under RSA 79-A:7, V(a) are met. *Van Lunen*, 145 N.H. at 88. If any lot or site, or combination of adjacent lots or sites, is under the same ownership and large enough to remain qualified for current use, the lot or lots are not changed in use until "actual construction begins on the [lots] causing physical changes in the earth." RSA 79-A:7, IV(a); *see also* RSA 79-A:7, V(a). Because the trial court did not apply this analysis in its consideration of when each lot changed in use, we vacate its abatement order. The parties do not ask us to determine on appeal when each lot changed in use or whether the exception in RSA 79-A:7, V(a) applied. Thus, we remand for a redetermination of when each lot changed in use, and whether in light of the change in use date, the LUCT bills were timely.

■ With respect to the lots included in the June 2010 LUCT bills, the Town requests that we "hold that the Town mailed the LUCT bills in a timely fashion" because Hoyt conceded in its original petition that a change in use occurred on March 6, 2010. However, "parties may not have judicial review of matters not raised in the forum of trial." *74 Cox St. v. City of Nashua*, 156 N.H. 228, 232 (2007). Additionally, when addressing any issue

on appeal, we must consider whether the moving party has provided us with an adequate record to resolve the issue. *Cf. Comeau v. Vergato*, 149 N.H. 508, 510 (2003). Here, the Town has failed to provide us with a sufficient record to determine whether it presented its waiver argument to the trial court: the Town's trial memorandum is devoid of any such argument, and it has not supplied us with trial transcripts. Nor does the trial court's order indicate that the issue was raised below. Thus, we decline to address it on appeal.

The Town next argues that the trial court erred by applying the incorrect version of RSA 79-A:7, II(c). In ruling that the LUCT bills were untimely, the trial court applied the 2009 version of RSA 79-A:7, II(c), which required assessing officials to mail LUCT bills "within 12 months of the date upon which the local assessing officials receive written notice of the change of use from the landowner or his agent, or within 12 months of the date the local assessing officials actually discover that the [LUCT] is due and payable." In 2010, however, the legislature amended RSA 79-A:7, II(c), extending the twelve-month limitation period to eighteen months. *See* Laws 2010, 237:3. The amendment took effect on April 1, 2010. *See* Laws 2010, 237:5.

The determination of which version applies is relevant for the following reason. The trial court ruled that the subdivision lots had changed in use as of April 23, 2009. It then applied the twelve-month limitations period and concluded that because the Town failed to issue the LUCT bills before April 23, 2010, they were untimely. However, if the eighteen-month limitation period applies, the Town would have had until October 23, 2010, to issue the LUCT bills; thus, the June 2010 LUCT bills would have been timely even under the April 23, 2009 change in use date. Although we have vacated the trial court's decision which applied the April 23, 2009 change in use date, we nonetheless address the issue as to which version of the statute applies, as it "may arise on remand and . . . [the] parties discuss it in their briefs." *George v. Al Hoyt & Sons, Inc.*, 162 N.H. 123, 138 (2011).

■■ The trial court did not apply the amended version of RSA 79-A:7, II(c) because it concluded that to do so would constitute the application of an unconstitutional, retrospective law in violation of Part I, Article 23 of the State Constitution. Part I, Article 23 of the New Hampshire Constitution provides: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." The underlying purpose of this prohibition is to prevent the legislature from interfering with the expectations of persons as to the legal significance of their actions taken prior to the enactment of a law. *Iandolo v. Powell, Comm'r*, 134 N.H. 630, 632 (1991). "Every statute, which takes away or impairs vested rights, acquired

under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past must be deemed a retrospective law." *Tyler Road Dev. Corp. v. Town of Londonderry*, 145 N.H. 615, 616-17 (2000) (quotation omitted).

■ When engaging in an Article 23 analysis, we distinguish new laws that affect substantive rights and liabilities from those that solely affect procedures or remedies enforcing those rights. *In the Matter of Goldman & Elliott*, 151 N.H. 770, 772 (2005). Further, a "vested right may relate to the grounds of the action, or the grounds of the defen[s]e, both of which seem to be equally protected by the constitution." *Gould v. Concord Hospital*, 126 N.H. 405, 408 (1985) (quotation omitted). Generally, a statutory provision that reduces or enlarges the time within which an action may be prosecuted has "to do only with the remedy for existing rights." *Bourque v. Adams*, 93 N.H. 257, 259 (1945). The right to rely upon a statute of limitations as a defense vests, and therefore becomes a substantive right, only after the limitations period has run. *See Gould*, 126 N.H. at 408; *see Goldman & Elliott*, 151 N.H. at 772.

■ Here, as of the effective date of the amendment — April 1, 2010 — the twelve-month limitations period had not yet expired as to any notice or discovery of change in use that occurred on April 23, 2009; thus, the petitioners had no "vested right" to rely on that limitations period. *See Gould*, 126 N.H. at 408. Because the right was not vested, the legislature's extension of the limitations period from twelve months to eighteen months does not here represent an unconstitutional, retrospective law. No existing substantive or vested rights of the petitioners were impaired by the amendment. *Cf. Bourque*, 93 N.H. at 259. As a result, we conclude that the amended version of RSA 79-A:7, II(c) applies to any notice or discovery of change in use occurring on or after April 1, 2009. *See* RSA 79-A:7, II(c) (2012).

As a final matter, the Town argues that the "certificate of registration" from the Attorney General's Office constitutes a "necessary state approval" pursuant to RSA 79-A:7, V(a), which allows local assessing officials to "delay the assessment of the [LUCT] until any and all required permits or approvals have been secured, or illegal actions remedied." However, on this record, it is unclear whether this argument was raised before the trial court; we, therefore, decline to address it on appeal. *See 74 Cox St.*, 156 N.H. at 232.

*Vacated and remanded.*

DALIANIS, C.J., and HICKS, J., concurred; LYNN, J., concurred specially.

Lynn, J., concurring specially. I join the opinion of the court except insofar as it elucidates the factors that may be considered in determining whether to overrule precedent. *See ante* at 105. Although my view as to the considerations that properly may warrant overruling precedent is broader than that espoused by the majority, *see State v. Quintero*, 162 N.H. 526, 543-47 (2011) (Lynn, J., concurring specially), I agree that in this case there is no cause for overruling our decision in *Appeal of Estate of Van Lunen*, 145 N.H. 82 (2000), particularly given the legislature's response to what, in my view, was the very well-reasoned special concurrence in *Formula Development Corp. v. Town of Chester*, 156 N.H. 177 (2007).[*] *See Formula Dev. Corp.*, 156 N.H. at 182 (Dalianis, J., joined by Duggan, J., concurring specially).

Merrimack
No. 2012-527

---

[*] Interestingly, the two justices who joined in the special concurrence in *Formula Development Corp.* also formed part of the court's majority in *Quintero*. Yet, contrary to the narrow "four factor only" test for overruling precedent relied on in *Quintero*, in *Formula Development Corp.* these justices asserted that *Van Lunen* should be overruled in part merely because it was decided incorrectly, and without ever mentioning the four factor test. *See Formula Development Corp.*, 156 N.H. at 186 (Dalianis, J., joined by Duggan, J., concurring specially) (advocating that *Van Lunen* be overruled because "[t]he stability of the law does not require the continuance of recognized error"; and noting that "[w]here a decision has proven unworkable *or* badly reasoned . . . we will not hesitate to revisit it" (emphasis added; quotations omitted)). The special concurrence in *Formula Development Corp.* is thus a further example of my point that the court has not consistently applied the four factor test even after we first utilized it in *Jacobs v. Director, New Hampshire Division of Motor Vehicles*, 149 N.H. 502, 505 (2003). *See Quintero*, 162 N.H. at 544-46 (Lynn, J., concurring specially).