NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

—————————————

Cheshire
No. 2012-313


THE STATE OF NEW HAMPSHIRE

v.

JOHN A. SMITH

Argued: November 13, 2013
Opinion Issued: January 28, 2014


Joseph A. Foster, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.

Stephanie Hausman, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.


DALIANIS, C.J. The defendant, John A. Smith, appeals the sentence imposed by the Superior Court (Fitzgerald, J.) following his conviction by a jury of receipt of stolen property. See RSA 637:7, :11, I(b) (2007). The sole issue for our review is whether the trial court committed plain error by imposing a felony-level sentence, see RSA 637:11, I(b), instead of a misdemeanor-level sentence, see RSA 637:11, III (2007), when the jury was not instructed that it had to find that the stolen property consisted of firearms. See RSA 637:11, I(b). We affirm.

The jury could have found the following facts. In the summer of 2010, the victim invited a man and a woman into his home for a drink and showed them two handguns that he owned: a Smith & Wesson .44 caliber handgun and a SIG Sauer .380 caliber handgun. The three continued to drink, and eventually, the victim lost consciousness. When he awoke the next morning, he noticed the two handguns were missing, and he reported them stolen.

In August 2010, Eric Underwood telephoned the defendant and asked if he was interested in buying any weapons. The defendant told Underwood to "bring them over." Underwood retrieved the two stolen handguns from another man and drove to the defendant's residence where the defendant gave Underwood $400 for the two guns.

Sometime thereafter, the defendant asked a friend if he was interested in purchasing the two guns for $200 each. The friend immediately telephoned the Keene Police Department, offering to act as a confidential informant in this case. The police, together with the New Hampshire Attorney General's Drug Task Force, arranged for the defendant's friend to purchase the guns from the defendant while the friend wore a recording device.

The "buy" occurred on August 17, 2010. Before the friend met with the defendant, the police searched the friend and gave him $400. See State v. Tabaldi, 165 N.H. 306, 309-10 (2013) (describing "controlled buys" in general). The police accompanied the friend to the defendant's home. The friend entered the home, spoke briefly with the defendant, gave him $400, and returned to the police with the two handguns. He was searched again after giving the guns to the police and was not found to have any contraband. An officer immediately checked the serial numbers on the guns and confirmed that they were the victim's stolen guns. At trial, the victim identified the guns as his stolen guns.

At the beginning of the trial, the jury was read the indictment on which the defendant had been arraigned:

> John Smith . . . is charged with the crime of receiving stolen property contrary to RSA 637:7 and 637:11 on or about the 17th day of August, 2010 . . . in that [he] did receive, retain, or dispose of the .380 caliber handgun and/or a .44 caliber handgun, knowing that the handgun or handguns had been stolen, or believing that the handgun or handguns had probably been stolen, with the purpose to deprive the owner of that handgun or those handguns by selling one or both handguns to J.M., contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State.

Throughout the trial, witnesses, including the defendant, referred to the handguns as "firearms." At the trial's conclusion, the jury was instructed that, to convict the defendant, it had to find, beyond a reasonable doubt, that: (1) he "received, retained, and/or disposed of property"; (2) "the property belonged to another person"; (3) he "knew the property had been stolen or believed that . . . it had probably been stolen"; and (4) he "received the property with the purpose to deprive the owner of the property." The defendant did not object to those instructions. After the jury convicted the defendant, the trial court sentenced him to the New Hampshire State Prison for a minimum of three years and a maximum of six years, stand committed. The defendant did not object to the sentence.

On appeal, however, the defendant argues that his sentence violates Part I, Article 15 of the State Constitution because, for him to receive a felony-level sentence, the jury must have been instructed to find, unanimously and beyond a reasonable doubt, that the stolen property consisted of firearms. See RSA 637:11, I(b) (receipt of stolen property constitutes a class A felony when "[t]he property stolen is a firearm"). Because the defendant did not make that argument in the trial court, he invokes the plain error rule, which allows us, under certain narrowly drawn circumstances, to correct errors not raised in the trial court. See Sup. Ct. R. 16-A.

For us to find plain error: (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights. State v. Charest, 164 N.H. 252, 254 (2012). If all three conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. The rule is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result. Id. We assume, without deciding, that the first three prongs of the plain error test are met. See State v. Russell, 159 N.H. 475, 490-94 (2009). We, therefore, confine our review to the fourth prong of the plain error test.

We find Russell instructive. The defendant in Russell, 159 N.H. at 490, was sentenced under RSA 651:2, II-g (Supp. 2013), which provides for an enhanced sentence "[i]f a person is convicted of a felony, an element of which is the possession, use or attempted use of a deadly weapon, and the deadly weapon is a firearm." The trial court had instructed the jury that to convict the defendant of armed robbery, it had to find that he was armed with a "deadly weapon." Id. (quotation omitted). However, the court did not instruct the jury that it had to find that the "deadly weapon" with which the defendant was armed was a firearm. Id. Instead, the trial court defined a "deadly weapon" as "any firearm, knife or anything else which is used in such a way that the defendant knew or should have known that it could result in death or serious bodily injury." Id. (quotation omitted). At trial, there was evidence that the

3

"deadly weapon" used could have been a BB gun.  Id. at 492.  The defendant argued that, based upon the jury instructions and evidence presented at trial, the jury could have convicted him of armed robbery with a BB gun.  Id. at 489.  Accordingly, he contended that because the trial court did not instruct the jury that it had to find that the "deadly weapon" he used in the armed robbery was a firearm, his sentence under RSA 651:2, II-g was unconstitutional.  Id.

Because the defendant in Russell failed to object to the jury instructions and to his sentence, we reviewed his sentence under the plain error rule.  Id. at 489.  Although we agreed with the State's concession that the trial court erred and that the error was plain, id. at 490, we concluded that the fourth prong of the plain error test was not met because evidence that the defendant used a firearm was overwhelming and undisputed, id. at 491-93.  We explained that although a witness testified "that he initially thought that the shooter had a BB gun . . . , he also testified that the defendant pointed a gun at [the victim]."  Id. at 492.  The witness stated that the gun looked like a revolver and that a BB gun would not have done as much damage to the window of the car in which the victim was seated.  Id.  Moreover, the victim testified that someone "had stuck a gun inside [the] vehicle and shot out its back window."  Id.  A crime scene technician testified that he found a metal fragment in the vehicle's dashboard and that the fragment appeared to be a bullet.  Id.  A firearms expert confirmed that the fragment "was from a discharged bullet."  Id. (quotation omitted).  In addition, at trial, the defendant in Russell did not dispute that the deadly weapon used during the robbery was a firearm.  Id. "Given the overwhelming and essentially uncontroverted evidence that the defendant used a firearm to commit the armed robbery," we declined to exercise our discretion to reverse the defendant's conviction and sentence under the fourth prong of the plain error test.  Id.

Similarly, here, evidence that the stolen property at issue consisted of handguns was overwhelming.  The evidence at trial concerned only handguns as stolen property; no other allegedly stolen property was discussed.  Additionally, the defendant did not dispute at trial, and does not dispute on appeal, that a handgun is a firearm.  See id.  At trial, witnesses, including the defendant, referred to the stolen handguns as "firearms."  In this case, as in others involving the issue of whether a handgun is a "firearm," based upon the evidence at trial, "there was no real issue as to whether the handgun was a firearm."  State v. Taylor, 136 N.H. 131, 134 (1992); see State v. St. John, 129 N.H. 1, 3-4 (1986) (when defendant was charged with possessing a .357 Dan Wesson handgun and witnesses referred to the handgun as a "firearm" at trial, there was no need for trial court to instruct jury that a firearm is "a weapon from which shot is discharged by gunpowder" (quotation omitted)).  Accordingly, as in Russell, we will not exercise our discretion under the fourth prong of the plain error rule to reverse the defendant's conviction and sentence.  See Russell, 159 N.H. at 492.  Given the essentially uncontroverted evidence

that the stolen property consisted of handguns and that the handguns constitute firearms, "the real threat then to the fairness, integrity, and public reputation of judicial proceedings would be if the defendant, despite th[at] . . . uncontroverted evidence . . . , were not to receive the enhanced sentence." Id. (quotation and brackets omitted).

In Russell, we also declined to hold "that the failure to instruct the jury on an element of the offense always constitutes plain error," explaining that to do so "would create a windfall for criminal defendants," giving them "every incentive not to object" at trial to jury instructions. Id. at 494. The defendant asks us to overrule that part of Russell. He asks that we hold "that, where the jury has not been instructed to find a sentencing enhancement element, sentencing based on that enhancement is plain error, satisfying all four elements of the plain error test."

> Generally, we will overrule a prior decision only after considering: (1) whether the rule has proven to be intolerable simply by defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

Maplevale Builders v. Town of Danville, 165 N.H. 99, 105 (2013) (quotation omitted). The defendant argues only that Russell is "intolerable," but not because it "def[ies] practical workability." Id. (quotations omitted). The defendant asserts that Russell is intolerable because: (1) it treats defendants who have preserved their objections to jury instructions and sentencing differently from those who have not; (2) it conflicts with prior and subsequent cases; and (3) it undermines "significant constitutional guarantees." In effect, the defendant finds Russell to be intolerable because he believes that it was incorrectly decided. However, "[p]rincipled application of stare decisis requires a court to adhere . . . to . . . precedent in the absence of some special reason over and above the belief that a prior case was wrongly decided." Id. (quotation omitted). Having failed to brief the four stare decisis factors, the defendant has not persuaded us that Russell must be overruled. See id.

Affirmed.

HICKS, CONBOY and BASSETT, JJ., concurred; LYNN, J., concurred specially.

LYNN, J., concurring specially. Because my view as to the factors that may warrant overruling precedent is broader than that of the majority, see State v. Quintero, 162 N.H. 526, 543-47 (2011) (Lynn, J., concurring specially), I arguably would be more willing than the majority to overrule State v. Russell, 159 N.H. 475 (2009), if I thought that case had been wrongly decided. But I do not believe Russell was wrongly decided; and insofar as the defendant argues that Russell is fundamentally at odds with our decision in State v. Kousounadis, 159 N.H. 413 (2009), I tend to believe that it is Kousounadis, not Russell, that is ripe for reexamination. See Kousounadis, 159 N.H. at 429-34 (Dalianis, J., joined by Hicks, J., concurring in part and dissenting in part).