NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

————————————————

Belknap
Case No. 2024-0606
Citation: Ball v. Roman Catholic Bishop of Manchester, 2025 N.H. 45


RANDY BALL

v.

ROMAN CATHOLIC BISHOP OF MANCHESTER & a.

Argued: June 18, 2025
Opinion Issued: October 15, 2025


McLane Middleton, Professional Association, of Manchester (Scott H. Harris and Jesse J. O'Neill on the brief, and Scott H. Harris orally), and Seeger Weiss LLP, of Ridgefield Park, New Jersey (Stephen A. Weiss on the brief), for the plaintiff.


Shaheen & Gordon, P.A., of Concord (James J. Armillay, Jr. and Olivia F. Bensinger on the brief, and Olivia F. Bensinger orally), for the defendants.


DONOVAN, J.

[¶1] The plaintiff, Randy Ball, appeals an order of the Superior Court (Leonard, J.) dismissing his complaint against the Roman Catholic Bishop of Manchester and Camp Bernadette and Camp Fatima, Inc. (collectively, the

defendants) that alleged negligent hiring, retention, and supervision of an employee who sexually abused him when he attended camp in the 1970s. On appeal, the plaintiff argues the trial court erred in: (1) determining that applying RSA 508:4-g (Supp. 2024), which was amended in 2020 to remove the statute of limitations defense in personal actions alleging sexual assault and related offenses, to revive the plaintiff's time-barred claim would be an unconstitutional retrospective application of the law, see N.H. CONST. pt. I, art. 23; and (2) concluding that, even if the constitutional protection against retrospective laws were subject to a balancing test, the defendants' vested right in a statute of limitations defense outweighed the plaintiff's right to recover. See N.H. CONST. pt. I, arts. 14, 23. We affirm.

I.      Facts

[¶2] The following facts are derived from the plaintiff's complaint and are assumed to be true for the purposes of this appeal. See Barufaldi v. City of Dover, 175 N.H. 424, 425 (2022). The plaintiff attended Camp Fatima as a child in the mid-1970s. Employees of the Roman Catholic Bishop of Manchester managed, maintained, operated, and controlled the camp.[1] A priest, who served as the camp director, sexually abused the plaintiff.

[¶3] No party disputes the trial court's conclusion that when these events occurred, a generally applicable statute of limitations — establishing that a minor has until two years after reaching the age of majority to bring a personal action — provided the limitations period that governed the plaintiff's claim. See Norton v. Patten, 125 N.H. 413, 414 (1984). Nor do the parties dispute on appeal that the plaintiff, born in 1966, did not file a complaint before the limitations period expired in 1986.

[¶4] In 2005, the legislature enacted RSA 508:4-g, which set forth a distinct limitations period for personal actions based upon sexual assault and related offenses. Laws 2005, ch. 283. In 2008, the legislature amended RSA 508:4-g to extend this limitations period. Laws 2008, 193:1. Then, in 2020, the legislature amended RSA 508:4-g to, as relevant to this appeal, remove the limitations period. Laws 2020, 24:11; RSA 508:4-g.

[¶5] The current version of RSA 508:4-g provides that "[a] person, alleging to have been subjected to any offense under RSA 632-A or an offense under RSA 639:2 may commence a personal action at any time." RSA 508:4-g (emphasis added); see RSA ch. 632-A (2016 & Supp. 2024) (governing sexual assault and related offenses); RSA 639:2 (2016) (defining incest). Except for its

---

[1] At the time, the Roman Catholic Bishop of Manchester conducted business as the Diocese of Manchester. For ease of identification, this opinion uses the designation "Roman Catholic Bishop of Manchester" to refer to this entity in the past and present.

2

effective date of September 18, 2020, RSA 508:4-g is silent as to whether it applies prospectively or retrospectively.  See RSA 508:4-g.

[¶6] On August 18, 2023, the plaintiff filed his complaint.  The defendants moved to dismiss, arguing that the statute of limitations barred the plaintiff's claim.  The plaintiff objected, arguing that the current version of RSA 508:4-g should apply retrospectively to revive his time-barred claim.  Following a hearing, the trial court issued an order granting the defendants' motion, ruling that the plaintiff failed to pursue his claim before the limitations period expired in 1986 and that applying RSA 508:4-g to revive the plaintiff's time-barred claim would violate Part I, Article 23 of the New Hampshire Constitution.  The plaintiff moved to reconsider, and the trial court denied the plaintiff's motion.  This appeal followed.

## II.    Analysis

[¶7] When reviewing a trial court's ruling on a motion to dismiss, we generally consider whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery.  State v. Lake Winnipesaukee Resort, 159 N.H. 42, 45 (2009).  The defendants, however, moved to dismiss based upon the statute of limitations.  The statute of limitations is an affirmative defense and the defendants bear the burden of proving that it applies.  Id.  Because the trial court granted the motion upon finding that the statute of limitations applied as a matter of law, our review is de novo.  See id.

### A. Part I, Article 23 of the New Hampshire Constitution & RSA 508:4-g

[¶8] Part I, Article 23 of the New Hampshire Constitution provides that "[r]etrospective laws are highly injurious, oppressive, and unjust.  No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses."  When testing legislation against Part I, Article 23, we conduct a two-part analysis to determine if it is unconstitutionally retrospective.  State v. Fournier, 158 N.H. 214, 218 (2009).  First, we discern whether the legislature intended the law to apply retroactively.  Id.  If so, we then inquire whether such retroactive application is constitutionally permissible.  Id.  A statute's constitutionality is a question of law, which we review de novo.  Id.

[¶9] For purposes of this case, however, we assume without deciding in the plaintiff's favor that the legislature intended RSA 508:4-g to apply retroactively, and we turn to the parties' arguments regarding the constitutionality of retroactively applying RSA 508:4-g to revive the plaintiff's time-barred claim.  The plaintiff argues that applying RSA 508:4-g retrospectively to revive his time-barred claim is a constitutional exercise of the legislature's police power.  The defendants counter that applying RSA 508:4-g

3

to revive the plaintiff's time-barred claim would be unconstitutional under Part I, Article 23 of the New Hampshire Constitution. We agree with the defendants.

[¶10] When determining whether retroactive application of a statute is constitutionally permissible, we consider whether the statute takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, with respect to transactions or considerations already past. Fournier, 158 N.H. at 218-19. As a guidepost, we inquire whether the statute affects substantive rights and liabilities or solely affects procedures or remedies enforcing those rights. Id. at 219. Ultimately, we must discern the nature of the rights affected by the act to assess whether its application to a particular matter offends the constitution. Id.

[¶11] Generally, in the context of statutes of limitations, a statutory provision that reduces or enlarges the time within which an action may be brought has to do only with the remedy for existing rights, see Maplevale Builders v. Town of Danville, 165 N.H. 99, 108 (2013), and there is no constitutional bar to applying it retrospectively, see State v. Hamel, 138 N.H 392, 394 (1994). After the limitations period has run, however, it is a vested right that cannot be taken away by legislative enactment. See id. at 395; see also Willard v. Harvey, 24 N.H. 344, 353 (1852) ("[I]f a law, though in form applying to the remedy only, practically deprives either party of any vested right . . . it is unconstitutional and void.").

[¶12] Here, the limitations period that originally governed the plaintiff's claim expired in 1986. At that point, the defendants' right to rely upon the statute of limitations defense vested. See Hamel, 138 N.H. at 395; Maplevale Builders, 165 N.H. at 108. Applying RSA 508:4-g to revive the plaintiff's time-barred claim would interfere with this vested right and would therefore be unconstitutional. See Gould v. Concord Hospital, 126 N.H. 405, 408 (1985) (unconstitutional under Part I, Article 23 to retrospectively apply amendment to statute of limitations when retrospective application would impair defendants' vested right to assert a limitations defense). Accordingly, the trial court did not err in holding that RSA 508:4-g cannot operate retrospectively in the case before us.

[¶13] The plaintiff nevertheless argues that under Hayes v. LeBlanc, 114 N.H. 141 (1974), the constitutional prohibition against retrospective laws must yield because RSA 508:4-g is a reasonable exercise of the legislature's police power. Specifically, the plaintiff asserts that the proposition in Hayes, 114 N.H. at 145, that the prohibition in Part I, Article 23 against retrospective laws "must yield where it is reasonable for [s]tate government to regulate activities in the exercise of the police power" is not limited to cases where a retrospective law impairs contractual rights and instead is applicable to all cases arising under Part I, Article 23. We disagree.

4

[¶14] The Contract Clause of the United States Constitution, U.S. CONST. art. I, § 10, cl. 1, declares that "[n]o state shall . . . pass any . . . law impairing the obligation of contracts." Although Part I, Article 23 of the New Hampshire Constitution does not expressly reference existing contracts, Fournier, 158 N.H. at 221, we have held that this provision offers equivalent protections to Article I, Section 10 of the United States Constitution where a law impairs a contract, or where a law abrogates an earlier statute that is itself a contract. Opinion of the Justices (Furlough), 135 N.H. 625, 630 (1992). We have thus designated the portion of Part I, Article 23 which duplicates the protections found in the Contract Clause of the United States Constitution as the "State Contract Clause[]." See Tuttle v. N.H. Med. Malpractice Joint Underwriting Assoc., 159 N.H. 627, 641-42 (2010) (setting forth a distinct State Contract Clause analysis applicable under Part I, Article 23 to determine whether legislation impairs contract rights); Opinion of the Justices (Furlough), 135 N.H. at 630.

[¶15] In Hayes, we held that retrospectively applying a statutory amendment that impaired contractual rights did not violate the Contract Clause of the Federal Constitution, U.S. CONST. art. I, § 10, cl. 1, or Part I, Article 23 of the New Hampshire Constitution. Hayes, 114 N.H. at 144-46. In reaching this conclusion, we explained that "[a]lthough U.S. CONST. art. I, § 10 prohibits a [s]tate from passing laws impairing the obligation of contracts, it is not an absolute bar to governmental regulation," and that "this limitation must yield where it is reasonable for [s]tate government to regulate activities in the exercise of the police power." Id. at 145. Next, we proceeded to explain that "[t]his principle is also applicable to the general prohibition in N.H. CONST. pt. I, art. 23 against retrospective laws." Id. (emphasis added).

[¶16] When our statements from Hayes are read in context, the principle that we extended to Part I, Article 23 is that — like Article I, Section 10 of the United States Constitution — the protection against retrospective laws is not an absolute bar to governmental regulation of contracts, and its limitation on the legislature's authority to regulate contracts must yield where the legislature's exercise of its police power is reasonable. See id. ("This prohibition [in Part I, Article 23] was not intended to prevent the legislature from amending laws which regulate contracts . . ." (emphasis added)). Accordingly, the rule we set forth in Hayes is applicable only to cases where retrospectively applying a law impairs contractual rights, see Opinion of the Justices (Furlough), 135 N.H. at 630, and not, as the plaintiff argues, to all cases arising under Part I, Article 23. This conclusion is consistent with our State Contract Clause jurisprudence. See, e.g., Tuttle, 159 N.H. at 641-42 (articulating State Contract Clause analysis and explaining that "the core task involved in resolving Contract Clause claims [is] striking a balance between constitutionally protected contract rights and the [s]tate's legitimate exercise of its reserved police power").

5

B. Stare Decisis

[¶17] Next, we address the plaintiff's argument that we should overrule our precedent establishing that a defendant has a vested right to rely upon a statute of limitations defense once the limitations period has run. See Gould, 126 N.H. at 408; Maplevale Builders, 165 N.H. at 108. This rule derives from Woart v. Winnick, 3 N.H. 473, 481-83 (1826). See, e.g., Willard, 24 N.H. at 354; Maplevale Builders, 165 N.H. at 108. The plaintiff argues that we should overrule or, alternatively, limit this rule to recognize that "there can be no vested right to a statute of limitations defense in actions based on sexual assault." For the following reasons, we decline to do so.

[¶18] The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results. Appeal of N.H. Dep't of Transp., 174 N.H. 610, 615 (2021). When we are asked to reconsider a holding, the question is not whether we would decide the issue differently de novo, but whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed. Id.

[¶19] Accordingly, we will overturn a decision only after considering whether: (1) the rule has proven to be intolerable simply by defying practical workability; (2) the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application. Id. Although these factors guide our judgment, no single factor is wholly determinative, because the doctrine of stare decisis is not one to be either rigidly applied or blindly followed. Id. at 616.

[¶20] The first stare decisis factor examines whether a rule has become difficult or impractical for trial courts to apply. Id. This factor weighs against overruling when a rule is easy to apply and understand. Id. The rule that a defendant has a vested right in a statute of limitations defense once the limitations period has run is simple to apply and understand. See id. In fact, we have consistently and effectively applied this rule to resolve numerous cases across multiple centuries. See, e.g., Woart, 3 N.H. at 482; Gould, 126 N.H. at 408. Therefore, we cannot conclude that the rule defies practical workability, and this factor weighs against overruling Woart.

[¶21] The second stare decisis factor concerns situations in which members of society may have developed operations or planned a course of action in reliance upon the challenged decision and, therefore, overruling that decision would create a special hardship for those affected. Appeal of N.H.

6

Dep't of Transp., 174 N.H. at 616. We have recognized that reliance on the unenforceability of a stale claim, which arises when a statute of limitations period has run, removes the incentive to preserve evidence. See City of Rochester v. Marcel A. Payeur, Inc., 169 N.H. 502, 508 (2016). Accordingly, the right to rely upon a vested statute of limitations defense implicates legitimate reliance interests, and this factor also weighs against overruling Woart. See Appeal of N.H. Dep't of Transp., 174 N.H. at 616.

[¶22] We consider the third and fourth factors together. Union Leader Corp. v. Town of Salem, 173 N.H. 345, 353 (2020). The third factor concerns whether the law has developed in such a manner as to undercut the prior rule. Id. The fourth factor concerns whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. Id. "We are sometimes able to perceive significant facts or understand principles of law that eluded our predecessor and justify departures from existing decisions." Id. (quotation and brackets omitted).

[¶23] The plaintiff points to no New Hampshire cases to suggest that the law has developed in such a manner as to undercut the rule that a defendant has a vested right in a statute of limitations defense once the limitations period has run, nor do we find any upon our own review. He does, however, raise two arguments with respect to the fourth factor, which we will address in turn. First, the plaintiff argues that we should overturn Woart because that decision "was likely informed by the very different ability that parties in 1826 had to preserve evidence." We disagree. Nothing in the language or reasoning of Woart suggests that the court premised its holding on obstacles to evidence preservation that no longer exist. See Woart, 3 N.H. at 481-83. Rather, the Woart Court primarily based its determination on protecting the individual against governmental overreach. Id. at 477, 481.

[¶24] Specifically, the Woart Court explained that "it is most manifestly injurious, oppressive, and unjust, that after an individual has, upon the faith of existing laws, brought his action, or prepared his defen[s]e, the legislature should step in, and, without any examination of the circumstances of the cause, arbitrarily repeal the law, upon which the action or the defen[s]e had been rested." Id. at 481-82. These underlying and fundamental concerns about fair governance continue to exist today. See State v. Mack, 173 N.H. 793, 813 (2020) (observing that the New Hampshire Constitution is a restraining document establishing that "we have majority rule with protection for minority and individual rights" (quotation omitted)). Accordingly, we are not persuaded that the advancements in evidence preservation that the plaintiff relies upon justify departure from the rule we set forth in Woart.

[¶25] The plaintiff also argues that the factual understanding of the issues of delayed disclosure that often accompany sexual assault has so changed, or come to be seen so differently, as to have robbed the old rule of

7

significant application or justification in the context of sex-based offenses. We disagree. The factors that we considered in setting forth the rule in Woart included: (1) the explicit language in Part I, Article 23 of the New Hampshire Constitution prohibiting the enactment of retrospective laws "for the decision of civil causes," N.H. CONST. pt. I, art. 23; Woart, 3 N.H. at 474, 477; (2) the appropriate balance of power between the government and the individual, Woart, 3 N.H. at 481-82; Mack, 173 N.H. at 813; and (3) the right of members of society to rely upon a defense based upon the existent laws. See Woart, 3 N.H. at 481-82; see also City of Rochester, 169 N.H. at 508.

[¶26] These legal principles remain deeply held today and are not altered by the developments in societal understanding of delayed disclosure in sexual assault cases. Accordingly, we hold that "significant application and justification," Appeal of N.H. Dep't of Transp., 174 N.H. at 615 (quotation omitted), for the rule recognizing a defendant's vested right in a statute of limitations defense continues to exist today. Based upon our review of the stare decisis factors, we cannot conclude that the rule set forth in Woart and its progeny "has come to be seen so clearly as error that its enforcement was for that very reason doomed." Id. (quotation omitted).

[¶27] The plaintiff next argues that we should nevertheless follow the Maryland Supreme Court's decision in Roman Catholic Archbishop of Washington v. Doe, 330 A.3d 1069 (Md. 2025), and determine that there is no vested right to a statute of limitations defense in actions based on sexual assault. In that case, the Maryland Supreme Court held that the enactment of a law that abolished such statutes with respect to childhood sexual abuse claims "did not retroactively abrogate vested rights in violation of the Maryland Constitution and Declaration of Rights." Roman Catholic Archbishop of Washington, 330 A.3d at 1075, 1102.

[¶28] In reaching its conclusion, however, the Maryland Supreme Court observed that it "has never squarely addressed whether reviving a claim that is time-barred by an ordinary statute of limitations abrogates a vested right," and then determined that the expiration of an ordinary statute of limitations does not create a vested right. Id. at 1085, 1087. We, conversely, have consistently held that the expiration of a statute of limitations does create a vested right. See, e.g., Willard, 24 N.H. at 354 ("It may be deemed settled, that a bar, under the statute of limitations, once established, is a vested right, of which a party cannot be deprived by legislation."); Maplevale Builders, 165 N.H. at 108 ("The right to rely upon a statute of limitations as a defense vests . . . after the limitations period has run."). Aside from urging us to adopt the reasoning of Roman Catholic Archbishop of Washington, the plaintiff does not argue or demonstrate that Woart and its progeny incorrectly concluded that an expired statute of limitations creates a vested right in defense against enforcement of a stale claim. Absent such a demonstration, stare decisis compels us to decline the plaintiff's invitation to overrule nearly two hundred years of precedent.

8

C. <u>Part I, Article 23 & the Right to Recover</u>

[¶29] Lastly, we consider the plaintiff's argument that his right to recover outweighs the defendants' vested right in their statute of limitations defense. The plaintiff contends that "[w]hen competing constitutional rights are in conflict, courts must engage in a balancing test." In making this argument, however, the only support he relies upon is <u>Sumner v. New Hampshire Secretary of State</u>, 168 N.H. 667 (2016). <u>Sumner</u> is inapposite here. That case involved a conflict of distinct constitutional rights not at issue in the instant case. <u>See</u> <u>Sumner</u>, 168 N.H. at 669-71 (weighing state constitutional interests against constitutional right of access, N.H. CONST. pt. I, art. 8, in public records case). Thus, we are not persuaded that such balancing is applicable here and, even assuming for the sake of argument that the constitutional protection against retrospective laws is subject to a balancing test, we are further not persuaded that such balancing would require the rights guaranteed under Part I, Article 23 of the New Hampshire Constitution to yield to the plaintiff's right to recover. <u>See</u> N.H. CONST., pt. I, art. 14.

III.    <u>Conclusion</u>

[¶30] We are acutely aware that victims of child sex abuse are some of the most vulnerable victims who deserve all of the protections and remedies available in our judicial system. <u>See</u> <u>State v. Besk</u>, 138 N.H. 412, 414 (1994). Further, we recognize that the result here may prevent some victims who have been impacted by sex abuse — during childhood or adulthood — from bringing claims when the statute of limitations has expired before the effective date of RSA 508:4-g. Our role, however, in our co-equal, tripartite form of government is to interpret the constitution and resolve disputes arising under it. <u>See</u> <u>Monier v. Gallen</u>, 122 N.H. 474, 476 (1982). We reiterate the words of this court, from over a century ago:

> [W]e recognize the doctrine, so often expressed, that we have nothing to do with the propriety, expediency, or policy of any law; that these considerations concern the legislature, and not us; that our sole duty, when the validity of any statute is challenged, is to ascertain and declare whether it conflicts with the constitution as the paramount law, leaving all other considerations with the legislature and people, where they of right belong.

<u>State v. Express Co.</u>, 60 N.H. 219, 234 (1880).

[¶31] We hold that the trial court correctly ruled that Part I, Article 23 precludes application of RSA 508:4-g to revive the plaintiff's time-barred claim. Our determination, premised upon our long-standing precedent establishing that a defendant has a vested right in a statute of limitations defense once the limitations period has run, is grounded in principles of stare decisis. <u>See, e.g.,</u>

9

Gould, 126 N.H. at 408.  We decline to overrule or limit this precedent here. Accordingly, we affirm.

Affirmed.

COUNTWAY and GOULD, JJ., concurred; TEMPLE, J., superior court justice, specially assigned under RSA 490:3, II, sat for oral argument but did not participate in the final vote.